INLAND SEAS BOAT COMPANY, APPELLANT, *v.*
BROWN, APPELLEE. ■

[Cite as Inland Seas Boat Co. v. Brown (1979),
61 Ohio App. 2d 120.]

(No. 37809—Decided February 8, 1979.)

*Mr. Frederick P. Vergon, Jr.,* for appellant.
*Mr. Thomas O. Gorman,* for appellee.

DAY, J.  Defendant-appellee, George M. Brown (defendant), was appointed statutory agent for plaintiff-appellant, Inland Seas Boat Company (plaintiff or Company). For a short time after June 1951, defendant performed legal services for the Company but had no further contact with plaintiff until the matters involved in the instant case arose in 1969.

Plaintiff maintained its principal office in Cleveland until 1957 when it moved its operation to Sandusky, Ohio. Defendant was not informed of the move. Plaintiff's articles were not amended to reflect the change in its principal place of business until 1970. A new statutory agent was appointed at that same time.

On October 10, 1969, a complaint was filed in the Common Pleas Court of Cuyahoga County under *Levan* v. *Inland Seas Boat Co.,* Case No. 877,818. The return of service indicated that the Sheriff had served defendant on October 28, 1969. Defendant called Levan's office, spoke to an attorney Wagner and advised him that defendant knew nothing about Inland Seas Boat Company. On December 19, 1969, a default notice in the case *Levan* v. *Inland Seas Boat Co.* was forwarded to defendant. He made no attempt to locate the Company. Instead he threw away the papers. A default judgment was rendered for Levan against the Company on December 31, 1969. The amount of the judgment was $3,000.

The Company first learned of Levan's suit against it when execution was levied on its property at the Cleveland Boat Show in January of 1970.

Efforts to vacate the judgment failed. The Company paid $3,794.20 to satisfy the Levan judgment and sued Defendant Brown alleging negligence and malpractice.[1]

A bench trial on stipulated facts resulted in a judgment for the defendant. Plaintiff appealed assigning five errors which are set out in the margin.[2] The majority finds none of the assignments well taken. The judgment is affirmed.

## I.

A formal opinion would probably not be justified in this case were it not for the unique application of negligence principles in the court below.

## II.

Although the legal conclusions of the trial court are somewhat murky, a fair rendering supports this summary:

(1) The Company was negligent in removing its principal place of business from one county to another without advising its statutory agent.

(2) The Company was negligent in not designating a new agent when it changed its principal place of business from one county to another.[3]

---

[1] No assignment of error pursues the malpractice point. Therefore, it need not be addressced here, App. R. 12(A).

[2] *"Assignments of Error*

*"1. The trial court errored [sic] in holding that appellant was contributorily negligent since Section 1701.07 of the Revised Code does not require a corporation which relocates its plant to [sic] and its articles of incorporation to reflect a change in the principle [sic] office and thereby designate a new principle [sic] office.

"2. The trial court errored [sic] in determining that appellant was contributorily negligent since even assuming *arguendo* that the articles of incorporation must be amended to reflect a new principle [sic] office when the physical offices are relocated, such a requirement is for the protection of the public and not the statutory agent and thus the duty violated does not flow to appellee.

"3. The trial court errored [sic] in barring recovery by appellant since even assuming *arguendo* that appellant was contributorily negligent, under the doctrine of last clear chance liability was clearly established.

"4. It was error for the trial court to limit its consideration solely to a theory of negligence since evidence and argument was presented at trial under alternative theories of negligence and breach of contract pursuant to Rule 15(B) which requires that theories outside the scope of the initial complaint be considered in the absence of objection.

"5. The trial court errored [sic] in holding for appellee since liability was clearly established under a theory of breach of contract."

[3] Section 1701.07 *Statutory agent.*

"(A) Every corporation *shall have and maintain an agent* (sometimes referred

(3) The statutory agent originally designated continued as agent until a successor was named despite the Company's dereliction and was negligent in not continuing to act in a manner "consistent with that of a reasonable prudent statutory agent."

(4) Although the statutory agent was negligent in throwing away suit papers without notifying the Company, the Plaintiff Company was contributorily negligent for noncompliance with R. C. 1701.07, and, therefore, cannot prevail.[4]

### III.

The plaintiff seeks to avoid the trial court's negligence conclusions by the argument that it was not negligent in not complying with R. C. 1701.07, but that if it were, the doctrine of last clear chance absolves it of the consequences.

A reviewing court will not go behind a trial court's conclusions unless those conclusions could not find support in a reasonable mind. It is clear that reasonable minds could differ on the negligence issues in this case. Accordingly, the trial court's determination of plaintiff's negligence as a proximate cause of plaintiff's loss must stand. Thus, the plaintiff's contributing negligence defeats his cause unless the doctrine of last clear chance applies.

However, the last clear chance contention avails the plaintiff nothing. For its negligence continued up to and including the negligent conduct of its then statutory agent—the defendant in the instant case. The doctrine of last clear chance is unavailable to a plaintiff whose own negligence has not ceased in time to allow the negligent defendant to avoid the injury. It is not "***available for the purpose of excusing contributory negligence continuing up to

---

to as the 'statutory agent'), upon whom any process, notice, or demand required or permitted by statute to be served upon a corporation may be served. *Such agent may be a natural person who is a resident of the county in this state in which the principal office of the corporation is located,* or may be a domestic corporation or a foreign corporation holding a license as such under the laws of this state which is authorized by its articles of incorporation to act as such agent, and which has a business address in the county in this state in which is located the principal office of the corporation designating such agent." (Emphasis added.)

[4] Conclusions of Law Nos. 14-18; cf. R. C. 1701.07 (A).

and at the time of the accident.\*\*\*" *Pennsylvania Co.* v. *Hart* (1920), 101 Ohio St. 196, 199.

While an "accident" is not involved in the instant case, the analogy from the *Hart* decision is obvious and compelling. Moreover, it was reasonably foreseeable by the plaintiff that the defendant statutory agent would consider his agency terminated and act accordingly after more than eighteen years of inactivity which included no communication.

The majority concludes that the first three assignments of error are without merit.

### IV.

The fourth and fifth assignments argue a right to recover on a contract theory. However, the pleadings do not allege and the stipulated facts do not support a claim in contract.

The fourth and fifth assignments of error are without merit.

*Judgment affirmed.*

PARRINO, P. J., concurs.

KRUPANSKY, J., dissents.

KRUPANSKY J., dissenting.   The majority is willing to accept without question the conclusions of the trial court concerning appellant's negligence—*i.e.,* that appellant failed to comply with R. C. 1701.07, and that this failure constituted contributory negligence barring his recovery in this action. As its reason for not upsetting these conclusions, the majority states that "a reviewing court will not go behind a trial court's conclusions unless those conclusions could not find support in a reasonable mind."

What the majority is saying is that it will not analyze the foundations of a trial court's decision unless those foundations are clearly unreasonable. How the majority could ever determine if a trial court's conclusions are reasonable or unreasonable without first analyzing them is beyond my understanding.

Furthermore, by using the term "conclusions" the majority is abdicating its responsibility and that of the court to determine whether the trial court correctly applied the law. Certainly a reviewing court will not reverse a reasonably sup-

portable *factual finding.* However, this standard is inapplicable to *conclusions of law,* which must be correct as opposed to reasonable.

The majority would have us believe that all the issues decided below, except the issue of last clear chance, were strictly factual determinations. However, this is clearly not the case. The trial court rendered both findings of fact and conclusions of law. Appellant's assignments of error attack the legal conclusions of the trial court and not its factual findings. Several legal issues are raised which should be determined by this court, but the majority has avoided them.

## I.

The first issue to be determined is whether R. C. 1701, the Ohio Corporations Code, requires a corporation to appoint a successor statutory agent when it moves its principal place of business from one county to another. R. C. 1701.07(A) states, in relevant part:

"Every corporation shall have and maintain an agent (sometimes referred to as the 'statutory agent'), upon whom any process, notice, or demand required or permitted by statute to be served upon a corporation may be served. Such agent may be a natural person who is a resident of the county in this state in which the principal office of the corporation is located.* * *"

The "principal office" is defined by R. C. 1701.01(H) as follows:

"The location of the 'principal office' of a corporation is the place named as such in its articles."

The various circumstances which allow or require the removal of one agent and, or, the appointment of a new agent are set out in R. C. 1701.07, as follows:

"(D) If any agent dies, removes from the county, or resigns, the corporation shall forthwith appoint another agent and file with secretary of state a written appointment of such agent. If an amendment to the articles changes the principal office of the corporation in this state to another county, the corporation shall forthwith appoint another agent and file in the office of the secretary of state a written appointment of such agent unless the agent is a corporate agent and has a business address in such other county, in which

event the corporation shall forthwith file with the secretary of state a written statement setting forth the business address of such corporate agent in such other county.***

"(F) An agent may resign by filing with the secretary of state a signed statement to that effect. The secretary of state shall forthwith mail a copy of such statement to the corporation at its principal office. Upon the expiration of sixty days after such filing, the authority of the agent shall terminate.

"(G) A corporation may revoke the appointment of an agent by filing with the secretary of state a written appointment of another agent and a statement that the appointment of the former agent is revoked."

Thus, an agent may unilaterally resign from his statutory agency or his appointment may be unilaterally revoked by the corporation. If an agent resigns, dies, or removes from the county (referring to the county where the Articles of Incorporation designate the location of the principal office), the corporation is obliged to appoint a new statutory agent.

Furthermore, when the corporation changes its principal office to another county *by amending its Articles of Incorporation to that effect,* it must appoint a new agent residing in that county. The statute recognizes by virtue of R. C. 1701.01(H), the only way a corporation can change the location of its principal office for purposes of complying with the various code sections dealing with corporations is to so amend its Articles of Incorporation.

Nowhere does the statute require a corporation to amend its Articles of Incorporation when it moves its physical plant from one county to another, nor does the statute require the appointment of a statutory agent in the county where the corporation maintains its physical plant or where it transacts its business.

Furthermore, the conclusiveness of the designation of location in the Articles of Incorporation has been established in *Pelton* v. *Transportation Co.* (1882), 37 Ohio St. 450, where the Supreme Court of this state said, at page 455:

"For many purposes, a corporation is regarded as having a residence—a certain and fixed domicil. In this state, where corporations are required to designate in their certificates of incorporation the place of the principal office, such office is the domicil or residence of the corporation. The principal of-

fice of a corporation, which constitutes its residence or domicil, is not to be determined by the amount of business transacted here or there, but by *the place designated in the certificate."* (Emphasis added.)

This doctrine has been consistently applied in a variety of circumstances. In determining the location of a corporation for taxation purposes, this court, the Court of Appeals for Cuyahoga County, stated as follows:

"From a review of the authorities it is clear that the place where the corporation is to be located must be fixed and established, and there is only one way that this may be done, and that is by designation in the articles of incorporation. Under the law this selection is the exclusive privilege of the corporation itself. It is a right concerning which there can be no interference by any outside agency. It is a prerogative that exists in a corporation with respect to its residence with the same inherent force that it exists in a person. All that is necessary is conformity to the requirements of law as established by the Legislature and interpreted by our courts. * * *

"The designation in the articles of incorporation as to the place where it is located fixes and establishes its residence, even though at another location its principal business is transacted. The corporation and the public are bound by this designation, not only with reference to the place of location * * *. Until an amendment is made in conformity to law, these designations are unalterable and establish the status of the corporation with respect to these various questions. * * * Hence the impregnable character of the designations in the articles of incorporation, and especially the designation by which the corporate body itself chooses its own place officially to reside, locate, and live. * * *

"A certificate of incorporation which, under the statute, specifies the place where the principal office of the company is to be located, is conclusive as to the location of such office." *Stanton* v. *Tax Comm.* (1927), 26 Ohio App. 198, 203, 204, 205.

The policy of this state has been clear on this subject:

"The Ohio laws relating to the formation of corporations have always required persons desiring to form a corporation to state in their articles of incorporation the place where the

principal business office of the company will be located, and that location is carried into and forms an integral part of the charter issued to the corporation. The corporation is authorized and empowered to change the place of domicile by following certain provisions of the statute relating thereto." *State, ex rel. Stanton, v. Zangerle* (1927), 117 Ohio State 436, 439.

In determining the proper place to serve notice on a corporation for the purposes of a forcible entry and detainer action, the court in *Barr Hotel Co. v. Lloyd MacKeown Buick Co.* (1957), 104 Ohio App. 69, relied on the foregoing principles in holding that the principal office named in the Articles of Incorporation was controlling.

The same principle was applied to determine the residence of a corporation for purposes of compliance with motor vehicle registration and licensing laws, in *Western Express Co. v. Wallace* (1945), 144 Ohio St. 612, and in a determination of corporate residence for purposes of properly filing chattel mortgages, in *K-T Sandwich Shoppe* (1929), 7 Ohio Law Abs. 525.

The place designated by the Articles of Incorporation has been upheld as the legal residence of a corporation even when the corporation totally ceased doing business in that county and even when its franchise had been cancelled by the Secretary of State.

"A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter." *Sweeny v. The Keystone Driller Co.* (1930), 122 Ohio State 16, 20.

It is apparent from a review of the statutory law and the case law covering this issue that the legal residence or principal office of a corporation is that location designated by the Articles of Incorporation, and only by amending its Articles can a corporation change the location of its principal office. Furthermore, a corporation is only required to maintain a statutory agent in the county in which its principal office is located. Therefore, there is no requirement that a corporation appoint a new agent when it moves its facilities to a different county unless the Articles of Incorporation are amended to designate the new county as the company's principal office.

Therefore, the finding of the trial court that the company was in violation of R. C. 1701 and therefore was negligent was incorrect and appellant's first assignment of error is well taken.

## II.

Although I believe the company did not violate any statutory duty, it did have a duty to Mr. Brown as a principal to its agent apart from any duties imposed by statutes. The trial court found that a corporation acts negligently when it fails to inform its statutory agent that it has moved its only physical place of business to another county. Since the main purpose of appointing a statutory agent is to accept service of process and it is obviously important that such an agent be in contact with the corporation he is representing when such an occasion arises, we agree that it is negligent for a corporation to fail to keep its statutory agent apprised of its physical location. Therefore, the company in the instant case was negligent in failing to inform Mr. Brown when it moved from Cleveland to Sandusky.

The trial court found that the duties of a statutory agent to his principal include notifying the corporation of the filing of a summons and complaint against it. It also found that Mr. Brown destroyed the summons and complaint served upon him as statutory agent of the company, and that he acted negligently in so doing. Finding both parties negligent, the trial court held that no liability could attach to Mr. Brown.

Superficially the facts suggest and the trial court accepted and applied the affirmative defense of contributory negligence. A careful analysis of both the facts and the law herein involved lead me to conclude the trial court's approach was erroneous.

Although appellant behaved negligently, it does not necessarily follow that it was contributorily negligent. The Supreme Court of Ohio has set forth and adopted as a well settled rule of law, in *Schweinfurth* v. *C.C.C. & St. L. Railway Co.* (1899), 60 Ohio St. 215, 221, as follows:

"***that not only must the negligence of one injured by another's culpable neglect contribute to produce the injury, but that, *if it is to constitute contributory negligence, it must contribute as a proximate cause, and not as a remote cause or mere condition.*" (Emphasis added.)

In other words, more than mere negligence is required to constitute contributory negligence. "The term 'contributory negligence' includes the element of proximate cause and is quite different from negligence which 'contributed to produce the injuries which he suffered.'" *N.Y.C.R.R. Co.* v. *Stevens* (1930), 9 Ohio Law Abs. 657, 658.

Furthermore, if a cause or condition is remote, it is immaterial that no injury would have occurred if such condition had not existed. If a new, independent and unforeseeable act or omission directly causes injury where a remote cause existed, the party who created the original condition is not responsible. The original condition is not a proximate cause of the injury. *Wymer-Harris Construction Co.* v. *Glass* (1930), 122 Ohio St. 398.

Thus, we are confronted by the question of whether the company's negligent omission contributed to its losses in the instant case as a direct and proximate cause or as a remote cause or a mere condition.

In determining proximate causation, we must consider the forseeability of behavior such as Mr. Brown's in the instant case.

"A rule of general acceptance is that, where the original negligence of the defendant is followed by the independent act of a third person which directly results in injurious consequences to plaintiff, defendant's earlier negligence may be found to be a proximate cause of those injurious consequences, if, according to human experience and in the natural and ordinary course of events, defendant could reasonably have foreseen that the intervening act was likely to happen. *Pudlo* v. *Dubiel,* 273 Mass. 172, 173 N. E. 536." *Taylor* v. *Webster* (1967), 12 Ohio St. 2d 53, 56.

Adapting this statement to the parties in the instant cause, the company's negligence may be found to be a proximate cause of its own injuries and therefore may be considered contributory negligence if it could reasonably have foreseen conduct such as that exhibited by Mr. Brown.

Let us first analyze the reasonably foreseeable consequences of the company's failure to notify Mr. Brown of its move. One might reasonably expect that a statutory agent served with process would immediately notify his principal of the pending proceedings. If, while trying to notify his prin-

cipal, the agent should discover the principal no longer maintains a physical presence in the county, the behavior reasonably to be expected of him is to attempt to locate his principal. If such attempts are unsuccessful, the only logical course open to such agent would be to forward the appropriate information to the Secretary of State, who, pursuant to R. C. 1701.07(H), would notify the corporation at its address listed with the Secretary of State and at any different address shown on its last filed franchise tax report.

If Mr. Brown, in the instant case, had behaved in this fashion, the company would have in fact received notice of process. The record indicates the company's Sandusky address was listed on its franchise tax forms on file. Thus, the basic risk foreseeable in this set of circumstances is that a statutory agent who is unadvised of its principal's location would be delayed in relaying notification of service of process to his principal.

It has been suggested that the company's failure to maintain contact with its agent for several years created the further risk the agent would totally forget his agency relationship. This did in fact occur in the instant case. However, to conclude that this is a reasonably foreseeable consequence of lack of contact between agent and principal would place a burden on every corporation that maintains a statutory agent to periodically remind its agent of its agency relationship. It is more logical to expect that any person who accepts the duties and responsibilities of being a statutory agent would keep records of his own agency commitments.

Assuming, arguendo, it is reasonably foreseeable that a statutory agent, out of contact with his principal for many years, would forget his agency, what type of behavior could one reasonably expect when service is attempted on that agent? The only reasonable thing for anyone to do under those circumstances is to refuse process and deny the agency. The record in the instant case shows Mr. Brown accepted process when personally served by the Sheriff with the summons and complaint. Once having accepted process, he made no attempt to forward these papers to the company. Since he was an attorney, Mr. Brown was well aware of the implications of his actions. After receiving notice the case was going to default, the second communication received by Mr. Brown

concerning court activity, he still made no attempts to notify either the company, the court, or the Secretary of State.

Can we, by any stretch of the imagination, consider it reasonably foreseeable that a statutory agent would discard suit papers instead of forwarding them to his principal? that an agent who cannot locate his principal would discard suit papers without attempting to locate his principal? or that an individual having forgotten his agency relationship and denying the same would accept service of process and then simply discard suit papers and allow a case to go to default without notifying the defendant, the court, or the Secretary of State?

I cannot say that Mr. Brown's behavior was reasonably foreseeable in the natural and ordinary course of events. The general rule is that "* * *[w]here there intervenes between an agency creating a hazard and an injury resulting from such hazard another conscious and responsible agency which could or should have eliminated the hazard, the original agency is relieved from liability. A break in the chain of causation thereby takes place which operates to absolve the original agency." *Thrash* v. *U-Drive-It Co.* (1953), 158 Ohio St. 465, paragraph two of the syllabus.

"The rule seems to be that whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence." *Springsteel* v. *Jones & Laughlin Steel Corp.* (1963), 2 Ohio App. 2d 353, 363.

Thus, this court has previously recognized the rule that the causal connection between one party's original act of negligence and the injuries ultimately suffered can be broken by the intervening act of another agency if such act was not reasonably foreseeable by the party committing the original act of negligence. Once having determined that Mr. Brown's behavior in the instant case was not a reasonably foreseeable consequence of the company's negligence in failing to inform him of its whereabouts, I conclude as follows: (1) Mr. Brown's acts of throwing away suit papers and his failure to make any attempt to properly forward those papers amounted to an intervening act breaking the causal connection between the company's own negligence and the injury it suffered. (2) Thus, the negligence of the company was not a

proximate cause of its losses. (3) Since the company's negligence was not a proximate cause of its losses, it cannot constitute contributory negligence. (4) Therefore, no contributory negligence being present in the instant case on the part of the corporation, the company is not barred from recovering its losses suffered as a direct and proximate result of the behavior of Mr. Brown.

There were many ways Mr. Brown could have attempted to avoid the effects of the default judgment against the company, with minimal time and effort on his part. When he spoke to Mr. Wagner concerning the suit papers, he could have inquired as to the company's address and simply forwarded the papers to it. He could have notified the court that proper service had not been obtained. He could have forwarded the papers to the Secretary of State, who, pursuant to R. C. 1701.07, would have forwarded them to the company.

As statutory agent for the company, Mr. Brown, once having accepted service, was obliged to at least attempt to forward the suit papers so the company would be aware of the case pending against it. When Mr. Brown tore up the suit papers and notices and made no effort whatsoever to alleviate the perilous position of the company, he was in neglect of his duties for which he is liable to appellant, since it was his unforseeable acts which directly and proximately caused damage to the company.

Therefore, it is my opinion that the trial court erred in applying the doctrine of contributory negligence and wrongly barred appellant from recovery in the instant case. I would reverse the judgment of the trial court as to the issue of appellant's liability and remand this case for a determination of damages.