STRACK ET AL., APPELLANTS, *v.*
WESTFIELD COMPANIES, APPELLEE.

(No. 12522—Decided November 26, 1986.)

*A. William Zavarello* and *Donald L. Marks,* for appellants.

*Ulmer, Berne, Laronge, Glickman & Curtis* and *Harold H. Reader III,* for appellee.

BAIRD, J. Plaintiffs-appellants, Maynard and Dorothy Strack, appeal the trial court's order denying their motion for reconsideration of its earlier order striking two counts of their second amended complaint. ·

In September 1982, the Stracks' home was destroyed by fire. The Stracks carried comprehensive home-owners' insurance with defendant-appellee, Westfield Companies ("Westfield"), to which they submitted a claim. After conferring with the local fire department, Westfield commenced its own investigation of the fire. Thereafter, Westfield refused to honor the claim of the Stracks.

The Stracks filed an action against Westfield alleging breach of the insurance contract and a tortious, bad-faith failure to settle their claim. They later amended their complaint to include their insurance agent. Westfield raised the affirmative defense of arson. Upon Westfield's motion for summary judgment, the trial court dismissed the bad-faith claim. The Stracks later filed a second amended compaint.

The new complaint was identical to the earlier one except for the addition of a new cause of action. This third claim requested damages for Westfield's alleged violation of insurance regulations. Westfield filed a motion to strike the second amended complaint. The trial court granted the motion with respect to the bad-faith-failure-to-settle claim and the claim based on purported violations of insurance regulations. The Stracks filed a motion for reconsideration which was denied. Undaunted, they filed a second motion for reconsideration one month later. The trial court again denied the motion but this time expressly found that there was "no just reason for delay."[1]

Assignment of Error I

"The trial court erred in striking

---

[1] We note that a motion for reconsideration of a trial court's judgment does not exist in Ohio. *Pitts* v. *Dept. of Transportation* (1981), 67 Ohio St. 2d 378, 21 O.O. 3d 238, 423 N.E. 2d 1105. We also observe that such a motion, even if recognized, would not postpone the running of the appeal time. App. R. 4(A). However, the trial court herein did not certify this case pursuant to Civ. R. 54(B) until it denied the Stracks' second motion for "reconsideration." Thus the appeal was timely filed.

plaintiffs' complaint and holding that there is no private cause of action arising under the Ohio statutes and regulations which govern the insurance industry."

The Stracks' argument on appeal does not concern the trial court's dismissal of their bad-faith-failure-to-settle claim. Errors not specifically pointed out in the record and separately argued by brief may be disregarded. *Inland Seas Boat Co.* v. *Brown* (1979), 61 Ohio App. 2d 120, 15 O.O. 3d 142, 399 N.E. 2d 579. Thus, this court will not address the propriety of this part of the trial court's order.

The Stracks contend that Ohio Adm. Code 3901-1-07 creates an implied private cause of action in favor of insureds. The declared purpose of this regulation is to supplement R.C. 3901.21, which defines unfair or deceptive trade practices in the insurance industry. Ohio Adm. Code 3901-1-07(B). Subsection (C) of the regulation enumerates sixteen unfair practices which "[i]t shall be deemed an unfair or deceptive practice to commit or perform with such frequency as to indicate a general business practice * * * ."

Nowhere in the Ohio statutory or regulatory framework proscribing deceptive trade practices in insurance does it provide a civil remedy to a private party aggrieved by an insurer. The Stracks urge this court to extrapolate such a remedy from those statutes and the regulation set out above. This court declines to do so.

Several cases from the United States Supreme Court have inferred a private cause of action from federal statutes and administrative regulations. *J.I. Case Co.* v. *Borak* (1964), 377 U.S. 426; *Cort* v. *Ash* (1975), 422 U.S. 66; Note, A New Direction For Implied Causes of Action (1980), 48 Fordham L. Rev. 505. The court in *Cort* enunciated a four-prong test for determining

when a private cause of action should be inferred:

"In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' * * * — that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? * * * Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? * * * And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? * * * " (Emphasis *sic.*) *Id.* at 78.

The fourth prong of the *Cort* test only applies to federal courts in diversity cases and thus is inapplicable here. Restatement of the Law 2d, Torts (1979) 301, 306, Section 874A, Comment *g.* Assuming *arguendo* that the Stracks are members of the class to whose especial benefit the regulation inures, we will analyze the regulation against the remaining two criteria of the test delineated in *Cort.*

A review of Ohio Adm. Code 3901-1-07 and R.C. Chapter 3901 does not reveal any legislative intent to either create or deny a private cause of action in favor of an insured. Because the legislature's intent cannot be gleaned from either the text or history of the regulation and statute, we must analyze the issue under the third prong of the test in *Cort* — whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy.

Any determination of the purpose of R.C. Chapter 3901 must begin with a definition of the powers and duties of

338

the Superintendent of Insurance. R.C. 3901.011 recites that:

"The superintendent of insurance shall be the chief executive officer and director of the department of insurance and shall have all the powers and perform all the duties vested in and imposed upon the department of insurance. *The superintendent of insurance shall see that the laws relating to insurance are executed and enforced. When a violation of a law relating to insurance is reported to him, he shall take the testimony under oath of all persons supposed to have knowledge of such violations, and cause such testimony to be reduced to writing. If the superintendent decides that there is sufficient evidence, he shall cause the person suspected of such violation to be arrested and charged with such offense, and he shall furnish the proper prosecuting attorney with all the information obtained by such superintendent, the names of witnesses, and a copy of all material testimony taken in the case.*" (Emphasis added.)

Pursuant to R.C. 3901.011 the superintendent is granted wide latitude and authority in overseeing insurance companies. It is his mandatory duty to execute and enforce the laws relating to insurance. *Belden* v. *Union Cent. Life Ins. Co.* (1944), 143 Ohio St. 329, 28 O.O. 295, 55 N.E. 2d 629. R.C. 3901.22 provides for an administrative hearing process in which aggrieved insureds can attempt to resolve their complaints with insurers. This statute enables the superintendent to impose administrative remedies on an insurer who commits unfair or deceptive trade practices. In addition, the statute provides that the superintendent may request the Attorney General to prosecute the violator. R.C. 3901.22(E). Civil penalties from one to ten thousand dollars are provided. R.C. 3901.22(F)(1), (2) and (3).

This court finds that the inference of a private cause of action would be inconsistent with the existing administrative enforcement scheme now in force. Supplying a tort remedy will not necessarily further the policy behind Ohio Adm. Code 3901-1-07. First, the existing remedies are more than adequate to deter any unfair or deceptive trade practices. Second, and more importantly, the current method of enforcing these prohibitions was, undoubtedly, to implement a legislative balance between consumer rights and legitimate business interests. In setting up this administrative framework, the legislature presumably had available to it whatever insurance industry and/or consumer expertise that it may have needed in order to arrive at its legislative policy conclusions. There is simply no reason why a court should substitute whatever its conclusions may be for those arrived at through the legislative process. See *Holloway* v. *Bristol-Myers Corp.* (C.A.D.C. 1973), 485 F. 2d 986.

The Restatement of Torts offers the following illustration of a situation where a court should probably not make a private cause of action available:

"A federal statute makes unfair methods of competition unlawful and establishes a commission to determine when methods of competition are unfair and to control them. The court may find that Congress intended the administrative program for enforcing the act by the commission to be an exclusive one and thus decline to supply a private cause of action." Restatement of the Law 2d, Torts, *supra,* Section 874A, at 312, Comment *i*, Illustration 16.

The Department of Insurance was established in order to determine what insurance practices were unfair or deceptive and how to best control them. The combination of administrative remedies and civil penalties

reflects the legislative solution to a problem perceived by it. This court will not substitute its judgment for that of the legislature, which could have easily expressly provided for such a remedy. Accord *D'Ambrosio* v. *Pennsylvania Natl. Mut. Cas. Ins. Co.* (1981), 494 Pa. 501, 431 A. 2d 966. Accordingly, the assignment of error is overruled and the order of the trial court is affirmed.

*Judgment affirmed.*

MAHONEY, P.J., and QUILLIN, J., concur.

QUILLIN, J., concurring.
This case is controlled by *Fawcett* v. *G. C. Murphy & Co.* (1976), 46 Ohio St. 2d 245, 75 O.O. 2d 291, 348 N.E. 2d 144. The question there, as here, was when does a statute impliedly create a private cause of action.