OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Instrumentation Technology, Inc. ("ITI"), appeals from a decision of the Lake County Court of Common Pleas granting appellee, Beacon Insurance Company of America ("Beacon"), summary judgment. For the following reasons, we affirm the decision of the trial court.
In the summer of 1987, ITI, acting through insurance agent Richard Tramte ("Tramte"), contacted Beacon to inquire about purchasing a commercial general liability ("GCL") insurance policy. After reviewing ITI's business practices, Beacon informed Tramte that it would not provide ITI with a quote for insurance because it did not meet its underwriting requirements due to its diverse work environment. Tramte called Beacon for more information and learned that the reason Beacon would not provide a quote was because it did not want to underwrite the products liability/completed operations risks associated with ITI's business.
Tramte contacted Donald Hobbins, an officer of ITI, with this information and explained that Beacon would not provide a quote unless ITI was willing to accept a policy without the products liability/completed operations coverage. Hobbins advised Tramte that he did not believe ITI needed either coverage. As a result, Tramte asked Beacon to provide ITI with a quote excluding products liability/completed operations coverage. Beacon complied and subsequently issued its standard GCL policy with an additional endorsement excluding the above coverage.[1]
On January 11, 1995, Stephen Barber ("Barber") was severely injured while working on a machine apparently designed, built, or serviced by ITI. As a result of his injuries, Barber sued several companies, including ITI. ITI promptly notified Beacon and sought coverage under its GCL policy. However, Beacon denied coverage, citing the endorsement to the policy which excluded coverage for bodily injury or property damage occurring away from premises owned or rented by ITI and arising out of ITI's products or completed work. On February 27, 1998, ITI settled its case with Barber for $15,000.
On June 17, 1998, ITI filed a complaint for declaratory judgment against Beacon and Kann Insurance Agency, Inc. ("Kann"), Beacon's agent, setting out nine separate causes of action. In its answer, Beacon admitted the factual allegations in the complaint, but denied that, as a matter of law, appellant was entitled to coverage under its policy.
Beacon filed a motion for summary judgment on October 5, 1998 arguing that: (1) the policy as written eliminated coverage for products liability/completed operations; (2) ITI had accepted the policy as written; and (3) ITI lacked standing to pursue a cause of action based on a violation of R.C. 3937.03(H). In response, ITI filed its own motion for summary judgment in which it argued that the products liability/completed operations exclusion was unenforceable as a matter of law.
After considering the parties' arguments, the trial court concluded that the endorsement in question had been filed with the Department of Insurance on March 17, 1986, in accordance with R.C.3937.03. As a result, the endorsement was effective for all policies written on or before April 1, 1986, and since ITI's policy was written after this date, the endorsement was both valid and enforceable as a matter of law. Accordingly, the trial court denied ITI's motion for summary judgment and granted Beacon's, eventually holding that Beacon had no duty to defend or indemnify ITI in the underlying lawsuit brought by Barber. On February 22, 1998, ITI filed a notice of voluntary dismissal with respect to the remaining claims against Kann.
ITI filed a timely notice of appeal to the trial court's grant of summary judgment. However, after an initial review of the notice of appeal and its attachments, this court ordered ITI to submit a memorandum in support of jurisdiction as a result of our concern that the voluntary dismissal of the remaining claims against Kann may have been ineffective. ITI complied with our request, and, based on the Supreme Court of Ohio's decision inDenham v. New Carlisle (1999), 86 Ohio St.3d 594, we concluded that the February 5, 1999 order granting summary judgment was a final appealable order when ITI voluntarily dismissed all claims against Kann. ITI now raises the following assignment of error:
 "The Trial Court erred in granting the Defendant Insurance Company's Motion for Summary Judgment and in failing to grant the Plaintiff Insured's Motion for Summary Judgment."
In support of this assignment, ITI argues that a specific filing with the Ohio Department of Insurance to provide products liability/completed operations coverage controls over any exclusion to the contrary. ITI believes that Beacon was obligated by its own policy to automatically provide the coverage in question and that in the absence of proof that an insured voluntarily relinquished a known right, the insured may not agree to any policy that violates R.C. 3937.03(H). Finally, ITI maintains that where a definition contained in a policy is inconsistent with exclusionary language, the resultant ambiguity should be construed in favor of providing coverage.
Summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J. Refrigeration, Inc.
(1993), 67 Ohio St.3d 266, 268.
Material facts are those facts which might affect the outcome of the suit under the governing law of the case. Turner v. Turner
(1993), 67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby,Inc. (1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
Moreover, a party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id.
If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id. If the nonmoving party fails to do so, then the trial court may enter summary judgment against the party.Id.
Pursuant to R.C. Chapter 3937, any insurance company doing business in Ohio is required to adhere to what is commonly known as the "file and use" system. This simply means that a company's rates for general liability coverage must be "filed" with the Superintendent of Insurance and only then may such rates be "used," unless they are disapproved by the superintendent. In reInvestigation of National Union Fire Ins. Co. (1993), 66 Ohio St.3d 81,82. Included under the ambit of Chapter 3937 are "every form of a policy, endorsement, rider, manual of classifications, rules, and rates, every rating plan, and every modification of any of them which * * * [a company] proposes to use." R.C. 3937.03(A). An insurer may also satisfy its filing obligations if it is a member of, or a subscriber to, an approved rating organization which makes such filings, and by authorizing the superintendent to accept such filings on its behalf. R.C. 3937.03(B).
Here, there is no dispute that the GCL policy issued to ITI which included the additional endorsement excluding products liability/completed operations coverage represented a change from Beacon's standard policy. Furthermore, Beacon readily admits that it did not file the policy change with the Department of Insurance as required by R.C. 3937.03 before issuing the policy.
Nevertheless, Beacon was listed at the Department of Insurance as a member of the Insurance Services Office ("ISO"). Filings made by ISO indicate that the standard GCL policy normally would have included coverage for products liability and completed operations. However, ISO had also filed several exclusionary endorsement forms, including the form at issue here, which was filed on March 17, 1986. As the trial court found, this endorsement was effective for all policies filed on or after April 1, 1986.
As a member of ISO, Beacon was entitled to use this particular endorsement without first filing a similar one on its own behalf. As R.C. 3937.03(B) states, an insurer can meet its filing requirements by being a member of, or subscribing to, an approved rating organization which makes appropriate filings. Because the policy at issue here was written after April 1, 1986, there is no question that Beacon's filing obligation with respect to the exclusionary endorsement was satisfied.
In addition, we believe ITI misinterprets the underlying purpose of R.C. 3937.03(H) when it argues that a specific filing with the Department of Insurance to automatically provide certain coverage controls over any contrary endorsement included in a policy. R.C. 3937.03(H) states that "[n]o insurer shall make or issue a contract or policy except in accordance with filings which are in effect for said insurer as provided in sections 3937.01 to3937.17 of the Revised Code." This section in no way requires any sort of mandatory coverage; nor does it prohibit an insurer from excluding certain coverages from a general policy. Instead, it only requires that before an insurer can issue an insurance policy or contract, that policy or contract must be on file with the Department of Insurance. As a result, so long as either the insurer, or a licensed rating organization to which the insurer belongs, files the appropriate exclusion, there is nothing to prevent an insurance company from incorporating that endorsement into a general policy.
Finally, we would briefly like to address Beacon's argument that ITI lacked standing to pursue a private cause of action against Beacon based on alleged violations of R.C. 3937.03. While there is some general authority in support of such a proposition, we feel those cases are inapplicable to the present matter. SeeStrack v. Westfield Cos. (1986), 33 Ohio App.3d 336; GoodyearTire Rubber Co. v. Aetna Casualty Surety Co. (July 12, 1995), Summit App. No. 16993, unreported, 1995 Ohio App. LEXIS 2975. Unlike Strack and Goodyear, which involved issues concerning the regulation of conduct not directly related to an insurance contract, in order for ITI's claims to be adjudicated, it is not necessary to resolve any issues that may fall under the regulatory scheme of the Department of Insurance. Instead, this case presents a question of whether or not Beacon incorporated a properly filed exclusionary endorsement into the GCL policy issued to ITI. In other words, the case becomes one of contract, as opposed to one involving misleading marketing techniques or claims adjustment practices. As a result, appellant has standing to pursue its claims.
Based on the foregoing analysis, and after construing all of the evidence most strongly in ITI's favor, this court concludes that there is no genuine issue of material fact as to whether ITI was entitled to products liability/completed operations coverage.
Appellant's sole assignment of error is without merit.
The judgment of the trial court is affirmed.
 _________________________ JUDGE JUDITH A. CHRISTLEY
FORD, P.J., NADER, J., concur.
[1] The code number assigned to the GCL policy in question was 92663. In the initial pleadings in the trial court, that is the number the parties used when referring to the general policy issued to ITI. However, the entire policy consists of several different forms, the primary one being form CG 00 01 11 88, which normally included products liability/completed operations coverage. The endorsement excluding products liability/completed operations coverage was form CG 21 04 11 85.