[Cite as *Automation Tool & Die, Inc. v. Medina Hosp.*, 2019-Ohio-1691.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

AUTOMATION TOOL & DIE, INC.

    Appellant

    v.

MEDINA HOSPITAL, et al.

    Appellees

C.A. No.     18CA0009-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    17CIV0642

DECISION AND JOURNAL ENTRY

Dated: May 6, 2019

CARR, Judge.

**{¶1}** Plaintiff-Appellant Automation Tool & Die, Inc. ("ATD") appeals from the judgment of the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** ATD is an employer participating in the State Insurance Fund under the Ohio Workers' Compensation System. In 2008, one of ATD's employees filed a First Report of Injury with the Ohio Bureau of Workers' Compensation alleging he was injured while employed at ATD. The employee sought treatment at Medina General Hospital and was seen by a certified nurse practitioner who was collaborating with physician Defendant-Appellee Francine Terry, M.D.

**{¶3}** When, after conservative treatment, the employee continued to be experiencing pain, the nurse practitioner "rubber-stamped" Dr. Terry's signature on a form requesting that the Ohio Bureau of Workers' Compensation approve an MRI for the employee. The MRI was

approved and additional findings were noted on the MRI. Thereafter, the nurse practitioner "rubber-stamped" Dr. Terry's signature onto another form requesting that the Ohio Bureau of Worker's Compensation allow additional conditions. The additional conditions were allowed. At the time, the employee had not been seen by Dr. Terry.

{¶4} The employee was separated from his employment in April 2009. He subsequently sought and received Temporary Total Disability Compensation. ATD later discovered that the employee was working while claiming to be disabled. The matter was investigated and the employee's physicians were interviewed. The Industrial Commission vacated the additional allowances.

{¶5} In July 2017, ATD refiled a complaint against Defendant-Appellant Medina Hospital and Dr. Terry. ATD asserted that the documentation submitted by Medina Hospital and Dr. Terry contained "false, fraudulent, deceptive and misleading information in that they appear to reflect opinions as to causation reached by a physician based on actual medical evidence, when in fact they were founded upon nothing more tha[n] a standard office protocol, unsupported by any medical evidence." ATD maintained that, as a result of the additional allowances, ATD incurred costs and expenses defending the employee's claim that it would not have incurred had it received accurate information.

{¶6} ATD alleged two claims: one for "Breach of Statutory and Regulatory Duties" pursuant to Ohio Adm.Code 4123-6-20(A), and one alleging fraudulent misrepresentation. Medina Hospital and Dr. Terry filed a motion for partial judgment on the pleadings. Therein, they asserted that they were entitled to judgment as a matter of law on the first count because Ohio Adm.Code 4123-6-20(A) did not provide ATD with a private cause of action and because

the claim was barred by res judicata based upon the trial court's ruling in prior litigation, which terminated when ATD voluntarily dismissed the lawsuit. ATD opposed the motion.

{¶7} Ultimately, the trial court granted Medina Hospital's and Dr. Terry's motion. The trial court found that Ohio Adm.Code 4123-6-20(A) did not provide ATD with a private right of action. The entry included language pursuant to Civ.R. 54(B).

{¶8} ATD has appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN GRANTING APPELLEES' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS ON THE FIRST COUNT OF AUTOMATION'S COMPLAINT "BREACH OF STATUTORY AND REGULATORY DUTIES" ARISING OUT OF OHIO ADMINISTRATIVE CODE 4123-6-20(A).

{¶9} ATD argues in its sole assignment of error that the trial court erred in granting the motion for partial judgment on the pleadings as Ohio Adm.Code 4123-6-20(A) does provide for a private right of action for ATD.

{¶10} Civ.R. 12(C) states, "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "Under Civ.R. 12(C), dismissal is appropriate where a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." (Internal quotations and citation omitted.) *Merryweather Mgt., Inc. v. KNL Custom Homes, Inc.*, 9th Dist. Summit No. 25971, 2012-Ohio-2977, ¶ 8.

{¶11} "In determining whether statutes may create a private cause of action for enforcement, the Ohio Supreme Court has held that a 'statutory policy' may not be implemented

by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio General Assembly." *Nielson v. Ford Motor Co.*, 113 Ohio App.3d 495, 500 (9th Dist.1996), quoting *Fawcett v. G.C. Murphy & Co.*, 46 Ohio St.2d 245, 249 (1976). In *Strack v. Westfield Cos.*, 33 Ohio App.3d 336 (9th Dist.1986), this Court adopted the relevant portions of the test outlined in *Cort v. Ash*, 422 U.S. 66, 78 (1975) in order to determine whether a private remedy is implicit in a statute or regulation. *Strack* at 337. The test involves analyzing three factors: "First, is the plaintiff one of the class for whose especial benefit the statute was enacted, * * *-that is, does the statute create a [] right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? * * * Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?" (Internal quotations, emphasis, and citations omitted.) *Id.* In examining the last two factors, this Court looks to the regulation at issue as well as other relevant statutes and regulations. *See id.*

{¶12} Here, ATD alleged in its complaint that Ohio Adm.Code 4123-6-20(A) provided it with a cause of action against Medina Hospital and Dr. Terry. The version of the regulation that ATD cites in its complaint was not effective at the time the employee presented to the nurse practitioner at Medina Hospital; however, as this issue was not raised below, we will examine the language of the current regulation.

{¶13} The regulation states:

A provider is responsible for the accuracy and legibility of all reports, information, and/or documentation submitted by the provider, the provider's employees, or the provider's agents to the bureau, industrial commission, claimant, employer, or their representatives, MCO, QHP, or self-insuring employer in connection with a workers' compensation claim. The provider, the provider's employees, and the provider's agents shall not submit or cause or allow to be submitted to the bureau, industrial commission, claimant, employer, or their representatives, MCO, QHP, or self-insuring employer any report, information,

and/or documentation containing false, fraudulent, deceptive, or misleading information.

Ohio Adm.Code 4123-6-20(A).

**{¶14}** Even assuming we were to conclude that ATD, as an employer and an entity of the type listed in the regulation, was "of the class for whose especial benefit the statute was enacted[,]" *see Strack*, 33 Ohio App.3d at 337, we still must examine the remaining two prongs. (Emphasis omitted.) Those prongs look to whether there is any indication of legislative intent, explicit or implicit, either to create or deny a private cause of action and whether it is consistent with the underlying purposes of the legislative scheme to infer such a remedy for the plaintiffs. *See id.*

**{¶15}** "In 1993, the General Assembly amended Ohio's workers' compensation scheme to create the Health Partnership Program ("HPP"), a comprehensive managed care program administered by * * * the Bureau of Workers' Compensation ("BWC"), to provide medical services to employees for their compensable injuries or occupational diseases." *Northwestern Ohio Bldg. & Constr. Trades Council v. Conrad*, 92 Ohio St.3d 282, 282 (2001). "The General Assembly has delegated broad rulemaking authority to the administrator of workers' compensation." *Id.* at 286. "When the General Assembly enacted the HPP, it vested additional rulemaking authority in the administrator of workers' compensation tailored to the specific goals of that comprehensive program." *Id.* at 287. "R.C. 4121.441(A) directs the administrator to 'adopt rules * * * for the [HPP] administered by the [BWC] to provide medical, surgical, nursing, drug, hospital, and rehabilitation services and supplies to an employee.'" *Id.* "To guide the administrator's efforts in promulgating rules for administering the HPP, the General Assembly enumerated twelve nonexhaustive categories of rules that it deemed necessary for the effective implementation of the program." *Id.* Those categories of rules include, "[p]rocedures

for reporting injuries to employers and the bureau by providers;" "[a]dequate methods of peer review, utilization review, quality assurance, and dispute resolution to prevent, and provide sanctions for, inappropriate, excessive or not medically necessary treatment;" "[a] timely and accurate method of collection of necessary information regarding medical and health care service and supply costs, quality, and utilization to enable the administrator to determine the effectiveness of the program;" "[a]ntifraud mechanisms;" "[s]tandards and criteria for the bureau to utilize in certifying or recertifying a health care provider or a managed care organization for participation in the health partnership program;" and "[s]tandards for the bureau to utilize in penalizing or decertifying a health care provider from participation in the health partnership program." R.C. 4121.441(A)(1)(c), (e), (f), (j), (k), (l).

{¶16} Ohio Administrative Code Chapter 4123-6 is entitled "Health Partnership Program[.]" That chapter includes the regulation at issue. Among the regulations in the chapter is a regulation that provides for the decertification of a "non-facility provider who has failed to comply with a workers' compensation statute or rule." Ohio Adm.Code 4123-6-02.7(A). In addition, Ohio Adm.Code 4123-6.02.7(C)(6) provides that the administrator of the bureau of workers' compensation

> may proceed directly to the enrollment termination and/or decertification of a provider for violation of * * * [a]cts of intentional misrepresentation, misstatement, or omission of a relevant fact or other acts involving false, fraudulent, deceptive, or misleading information on reports, information, and/or documentation submitted by the provider, the provider's employees, or the provider's agents to the bureau, industrial commission, claimant, employer, or their representatives, MCO, QHP, or self-insuring employer in connection with a workers' compensation claim.

{¶17} Another regulation provides that "[b]y signing the provider application and agreement or recertification application and agreement, the provider agrees to, and the bureau may refuse to certify or recertify or may decertify a provider for failure to * * * [c]omply with

the workers' compensation statutes and rules and the terms of the provider application and agreement or recertification application and agreement." Ohio Adm.Code 4123-6-02.3(D)(10).

{¶18} While the plain language of the regulation itself does not indicate a legislative intent to either create or deny a private cause of action, when the enabling statutes and other regulations in the chapter are considered as well, we cannot say there is any indication of a legislative intent to create a private remedy under Ohio Adm.Code 4123-6-20(A) for employers like ATD. Instead, the legislature authorized the bureau to administer the HPP and the administrator to develop standards for penalizing heath care providers. *See* R.C. 4121.441(A); R.C. 4121.441(A)(1)(l). Pursuant to that authority, the drafters of the regulation charged the bureau with evaluating provider compliance with the rules and created a penalty for a provider's non-compliance with the regulations in the chapter, and in particular acts involving misrepresentations on documentation; that penalty, enforced by the bureau, is a refusal to certify or recertify a provider or an order to decertify a provider. *See* Ohio Adm.Code 4123-6-02.7(A),(C); Ohio Adm.Code 4123-6-.02.3(D)(10). Given that the drafters of the regulations specified consequences for the failure to comply with the rules, we presume that they likewise could have outlined a private remedy had they intended one. Here, they did not.

{¶19} We note that, in its reply brief, ATD asserted other statutes supported that the legislature intended for it to have a private cause of action for violations of Ohio Adm.Code 4123-6-20(A). Notably, however, ATD did not raise those arguments in the trial court. This Court has long held that arguments not made in the trial court cannot be raised for the first time on appeal. *See Stevens v. Stevens*, 9th Dist. Medina No. 17CA0084-M, 2019-Ohio-264, ¶ 13. One of those arguments was that R.C. 4121.444 supported that the legislature intended for ATD to have a private cause of action for violations of Ohio Adm.Code 4123-6-20(A). Even if we

were to consider R.C. 4121.444, we note that R.C. 4121.444(D) only expressly authorizes the attorney general and self-insuring employers to bring an action to enforce the section. Thus, ATD has not demonstrated that R.C. 4121.444 evidences a legislative intent for a private cause of action for violations of Ohio Adm.Code 4123-6-20(A) for an employer participating in the State Insurance Fund, like ATD.

{¶20} Finally, we cannot say that it is consistent with the underlying purposes of the legislative scheme to infer a private cause of action for employers like ATD for violations of Ohio Adm.Code 4123-6-20(A). As noted by the Supreme Court,

> [t]he [Managed Care Organization ("MCO")] program was created as part of an overall plan, enacted by the General Assembly in R.C. 4121.44 and 4121.441, to more efficiently manage the medical aspects of workers' compensation claims. A committee composed of individuals from business, labor, medical providers, and the BWC staff designed the major components of the HPP, including the MCO program. The committee included representatives from the AFL-CIO, the Ohio Civil Service Employees Association, the Communications Workers of America, and the Ohio Trial Lawyers Association.
>
> On March 28, 1995, the committee reached unanimous agreement on key aspects of the BWC's HPP. Following public hearings, the BWC promulgated a series of administrative rules in Ohio Adm.Code Chapter 4123-6 to implement the HPP.
>
> Under the new program, the BWC administers the HPP and monitors the MCO program, including certifying each MCO and individual provider. The BWC also conducts regular recertification reviews. The BWC exclusively determines whether a claim is compensable and what conditions are allowed, subject only to an appeal to the Industrial Commission. Ohio Adm.Code 4123-6-043(A); 4123-6-045. The BWC authorizes the release of state funds to pay the medical claims. Ohio Adm.Code 4123-6-043(A); 4123-6-045(A). The BWC works with the MCO, the employer, the employee, and the provider to effect a course of treatment that promotes a safe and speedy return to work. Ohio Adm.Code 4123-6-043(B).

*State ex rel. Haylett v. Ohio Bur. of Workers' Comp.*, 87 Ohio St.3d 325, 328-329 (1999).

{¶21} We fail to see how authorizing a private cause of action for employers like ATD for violations of Ohio Adm.Code 4123-6-20(A) would assist in the more efficient management

of the medical aspects of workers' compensation claims. *See id.* at 328. Further, ATD has not explained how this would be the case. *See* App.R. 16(A)(7).

{¶22} In sum, we cannot say that a private cause of action is authorized under Ohio Adm.Code 4123-6-20(A) for employers such as ATD. ATD's assignment of error is overruled.

III.

{¶23} All outstanding motions are hereby denied. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

THOMAS P. MAROTTA and MICHAEL S. LEWIS, Attorneys at Law, for Appellant.

JEFFREY J. WEDEL and DAVID P. FRANTZ, Attoreys at Law, for Appellee.