THE STATE OF OHIO, APPELLEE, *v.* ROBERTS, APPELLANT.

[Cite as *State v. Roberts,* 134 Ohio St.3d 459, 2012-Ohio-5684.]

*Criminal law—R.C. 2933.82—Retention of biological evidence—The obligation to preserve and catalog criminal-offense-related biological evidence imposed upon certain government entities by R.C. 2933.82 applies to evidence in the possession of those entities at the time of the statute's effective date.*

(No. 2011-1882—Submitted September 25, 2011—Decided December 6, 2012.)

APPEAL from the Court of Appeals for Guernsey County, No. 10CA000047, 2011-Ohio-4969.

_____

SYLLABUS OF THE COURT

The obligation to preserve and catalog criminal offense-related biological evidence imposed upon certain government entities by R.C. 2933.82 applies to evidence in the possession of those entities at the time of the statute's effective date.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we decide whether the obligation to preserve and catalog criminal-offense-related biological evidence imposed upon certain government entities by R.C. 2933.82 applies to evidence in the possession of those entities at the time of the statute's effective date. We hold that R.C. 2933.82 is not retroactive, but that it does apply to biological evidence in the possession of governmental evidence-retention entities at the time of its effective date. Accordingly, we reverse the judgment of the court of appeals and remand to the trial court for further proceedings consistent with this opinion.

**RELEVANT BACKGROUND**

{¶ 2}   In September 1997, a jury found appellant, Clarence D. Roberts, guilty of aggravated murder, with a specification of aggravating circumstances, and aggravated robbery in connection with the death of Leo Stinnett.  Following the jury's recommendation, the trial court sentenced Roberts to life imprisonment without parole.  Roberts's convictions and sentence were affirmed on appeal.  *See State v. Roberts*, 5th Dist. No. 97CA29, 1999 WL 3956 (Nov. 24, 1998).

{¶ 3}   On September 30, 2010, Roberts filed a pro se motion in the trial court to order the preservation and listing of evidence.  Roberts sought preservation of the physical evidence and a certified list of all evidence so that he could retain an expert to conduct "touch DNA" analysis.  Roberts argued that because the prosecution's theory had relied on the testimony of a John LaFollett, he wanted an expert to perform touch DNA analysis on the evidence, "specifically including the pocket of the victim which was turned out when the wallet was taken, to determine whether John LaFollett's DNA can be found."

{¶ 4}   On November 30, 2010, the trial court denied Roberts's motion, finding that "even if John LaFollett's DNA could be found on the clothing of the victim, specifically the pocket, the evidence would not disclose a strong probability that it would change the result if a new trial would be granted and merely would impeach and contradict the former evidence."

{¶ 5}   Roberts appealed to the Fifth District Court of Appeals.  In his single assignment of error, he argued that the trial court erred as a matter of law in denying his motion to order the preservation and listing of evidence, in violation of R.C. 2933.82.  *State v. Roberts*, 5th Dist. No. 10CA000047, 2011-Ohio-4969, ¶ 5.

{¶ 6}   R.C. 2933.82 provides:

(B)(2) This section applies to evidence likely to contain biological material that was in the possession of any governmental evidence-retention entity during the investigation and prosecution of a criminal case * * *.

(3) A governmental evidence-retention entity that possesses biological evidence shall retain the biological evidence in the amount and manner sufficient to develop a DNA profile from the biological material contained in or included on the evidence.

(4) Upon written request by the defendant in a criminal case or the alleged delinquent child in a delinquent child case involving a violation of section 2903.01, 2903.02, or 2903.03, a violation of section 2903.04 or 2903.06 that is a felony of the first or second degree, a violation of section 2907.02 or 2907.03 or of division (A)(4) or (B) of section 2907.05 of the Revised Code, or an attempt to commit a violation of section 2907.02 of the Revised Code, a governmental evidence-retention entity that possesses biological evidence shall prepare an inventory of the biological evidence that has been preserved in connection with the defendant's criminal case or the alleged delinquent child's delinquent child case.

(5) Except as otherwise provided in division (B)(7) of this section, a governmental evidence-retention entity that possesses biological evidence that includes biological material may destroy the evidence before the expiration of the applicable period of time specified in division (B)(1) of this section * * *:

* * *

(7) A governmental evidence-retention entity that possesses biological evidence that includes biological material may destroy

3

the evidence five years after a person pleads guilty or no contest to a violation of section 2903.01, 2903.02, or 2903.03, a violation of 2903.04 or 2903.06 that is a felony of the first or second degree, a violation of section 2907.02, 2907.03, division (A)(4) or (B) of section 2907.05, or an attempt to commit a violation of section 2907.02 of the Revised Code and all appeals have been exhausted unless, upon a motion to the court by the person who pleaded guilty or no contest or the person's attorney and notice to those persons described in division (B)(5)(b) of this section requesting that the evidence not be destroyed, the court finds good cause as to why that evidence must be retained.

* * *

(C)(1) The preservation of biological evidence task force established within the bureau of criminal identification and investigation under section 109.561 [109.56.1] of the Revised Code shall establish a system regarding the proper preservation of biological evidence in this state. In establishing the system, the task force shall do all of the following:

(a) Devise standards regarding the proper collection, retention, and cataloguing of biological evidence for ongoing investigations and prosecutions;

(b) Recommend practices, protocols, models, and resources for the cataloging and accessibility of preserved biological evidence already in the possession of governmental evidence-retention entities.

{¶ 7} In overruling Roberts's assignment of error, the appellate court maintained that because R.C. 2933.82 became effective on July 6, 2010, and

Roberts was convicted in 1997, the statute would have to be applied retrospectively if it were to apply at all in this case. *Roberts*, 2011-Ohio-4969, ¶ 13. However, a statute is retrospective only if it contains an express, clear provision for retroactive application, and the appellate court noted that there was no such provision in R.C. 2933.82. *Id*. at ¶ 13.

**{¶ 8}** The court of appeals rejected Roberts's argument that the use of the verb "was" in R.C. 2933.82(B)(2) implied retroactive application. *Id*. at ¶ 14. The Fifth District stated that because the statute sets forth requirements involving the preservation of evidence after conviction, the word "was" refers to evidence in possession of any governmental evidence-retention entity during the investigation and prosecution of a criminal case after July 6, 2010. *Id*. at ¶ 14. Finally, it reasoned that the state could not do what it did not know it had to do, that is, meet the standards outlined in R.C. 2933.82 in cases that arose prior to its effective date. *Id*. at ¶ 14.

**{¶ 9}** Furthermore, the court of appeals stated that the statute created new rights and imposed new duties upon the state to preserve biological evidence or to notify certain individuals in the event the evidence was to be destroyed. *Id*. at ¶ 15. For instance, a task force established within the state Bureau of Criminal Identification and Investigation, *see* R.C. 109.561, was directed to establish a system for the proper preservation of biological evidence in Ohio. In establishing that system, the task force was directed to (1) "[d]evise standards regarding the proper collection, retention, and cataloguing of biological evidence for ongoing investigations and prosecutions" and (2) "[r]ecommend practices, protocols, models, and resources for the cataloguing and accessibility of preserved biological evidence already in the possession of governmental evidence-retention entities." R.C. 2933.82(C)(1)(a) and (b).

**{¶ 10}** Because the victim's clothing was not preserved pursuant to the practices and protocols created under the new task force, the court of appeals held

that Roberts could not benefit from retrospective application of the statute. *Id.* at ¶ 18. Therefore, the court of appeals held that the provisions of R.C. 2933.82 were to be applied prospectively only, *id.* at ¶ 19, and affirmed the judgment of the trial court, *id.* at ¶ 21.

{¶ 11} We granted Roberts discretionary review, 131 Ohio St.3d 1437, 2012-Ohio-331, 960 N.E.2d 986, and agreed to determine whether R.C. 2933.82 applies to biological evidence already in the possession of governmental evidence-retention entities at the time of the statute's effective date of July 6, 2010.

## ANALYSIS

### *Historical Context of R.C. 2933.82*

{¶ 12} "[W]e must construe [statutes] in a manner that carries out the intent of the General Assembly." *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 29, citing *Harris v. Van Hoose*, 49 Ohio St.3d 24, 26, 550 N.E.2d 461 (1990). In order to determine legislative intent, "[w]e look to the language of the statute, the circumstances under which the statute was enacted, legislative history, and the consequences of a particular construction." *Id. See* R.C. 1.49; *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 113 Ohio St.3d 394, 2007-Ohio-2203, 865 N.E.2d 1275, ¶ 12.

{¶ 13} R.C. 2933.82 was enacted as a product of the "Innocence Movement," which "refers to a related set of activities by lawyers, cognitive and social psychologists, other social scientists, legal scholars, government personnel, journalists, documentarians, freelance writers, and citizen-activists who, since the mid-1990s, have worked to free innocent prisoners and rectify perceived causes of miscarriages of justice in the United States." Zalman, *An Integrated Justice Model of Wrongful Convictions*, 74 Alb.L.Rev. 1465, 1468 (2011).

**{¶ 14}** One mission of the movement was to create innocence projects at law schools "to investigate claims of wrongful convictions, especially in cases where DNA testing is not possible but there are serious doubts about the reliability of the conviction." *Id.* at 1497. The innocence projects often rely on modern technology and scientific advancements, considering that one of the best tools modern science has to offer the criminal-justice system is the ability to conclusively and correctly identify a particular individual by the source of DNA found at a crime scene. The innocence projects not only shed light on the fact that biological evidence and DNA are critical components of the criminal-justice system, because they are often the link to solving crimes; they also highlight the need for the preservation and storage of the DNA and biological evidence as a way to exonerate wrongfully convicted individuals.

**{¶ 15}** As a result of the movement, several law schools created innocence projects, including the Innocence Project affiliated with Benjamin N. Cardozo School of Law in 1992 and the Center on Wrongful Convictions at Northwestern Law School in 1998. *Id.* at 1489, 1518-1519. By 2000, there were more than 50 innocence projects throughout the country. *Id.* at 1499. Moreover, "[t]he average number of annual DNA exonerations * * * grew from 6 per year between 1989 and 1999, to 18.1 per year from 2000 to 2009." *Id.*, citing *Know the Cases: Browse Profiles*, Innocence Project, http://www.innocenceproject.org /know/Browse-Profiles.php. "Reforms, such as legislation establishing post-appeal jurisdiction for DNA testing," were also taking place throughout the country. *Id.*, citing Rachel Steinback, Comment, *The Fight for Post-Conviction DNA Testing Is Not Yet Over: An Analysis of the Eight Remaining "Holdout States" and Suggestions for Strategies to Bring Vital Relief to the Wrongfully Convicted*, 98 J.Crim.L. & Criminology 329, 336 (2007).

**{¶ 16}** By 2003, over 140 wrongfully convicted individuals across the nation had been exonerated by reexamining DNA evidence. Gross, Jacoby,

Matheson, Montgomery & Patil, *Exonerations in the United States 1989 Through 2003*, 95 J.Crim.L. & Criminology 523, 524 (2005).

{¶ 17} That same year, the Ohio Innocence Project was founded at the University of Cincinnati College of Law. Ohio Innocence Project, http://law.uc.edu/o-i-p (accessed Nov. 27, 2012); Godsey, *False Justice and the "True" Prosecutor: A Memoir, Tribute, and Commentary*, 9 Ohio St.J.Crim.L. 789, 790 (2012). Also, the General Assembly passed an act to "establish a mechanism and procedures for the DNA testing of certain inmates serving a prison term for a felony or under a sentence of death." Title, Sub.S.B. No. 11, 150 Ohio Laws, Part IV, 6498, 6498.

{¶ 18} Despite these changes, there were no statewide procedures for preserving or storing biological evidence, resulting in inconsistent storage techniques by governmental entities throughout the state. The lack of consistency in preserving and storing evidence allowed evidence to be compromised, lost, or prematurely destroyed.

{¶ 19} Having recognized that proper preservation promotes justice and prevents injustice and that the lack of guidelines for the preservation and storage of evidence could lead to grave results, on March 24, 2010, the General Assembly enacted R.C. 2933.82, 2010 Sub.S.B. No. 77 ("S.B. 77"). S.B. 77 rectified the inconsistencies for preserving and storing biological evidence by establishing a task force charged with creating a uniform system and standards. At the time it was enacted, S.B. 77 was heralded as a national model for reforms to protect the innocent from wrongful conviction by imposing a duty upon law-enforcement agencies to store and maintain biological evidence. Innocence Project, March 16, 2010 press release, http://www.innocenceproject.org/Content/Ohio_Passes_ Major_Package_of_Reforms_on_Wrongful_Convictions_Governor_Is_Expected _to_Sign_Bill_Making_Ohio_a_National_Model.php (accessed Nov. 27, 2012);

S. Michael Lear, *Ohio's Senate Bill 77: A National Model of Reform,* Vindicator (Spring 2011) 8.

{¶ 20} With this historical backdrop of S.B. 77 in mind, we now address whether R.C. 2933.82 is a retroactive statute.

### *The plain language of R.C. 2933.82*

{¶ 21} "It is a cardinal rule that a court must first look to the language of the statute itself to determine the legislative intent.  * * *  If that inquiry reveals that the statute conveys a meaning which is clear, unequivocal and definite, at that point the interpretative effort is at an end, and the statute must be applied accordingly." *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106, 304 N.E.2d 378 (1973).

{¶ 22} The parties disagree over what R.C. 2933.82 requires.

{¶ 23} Roberts's argument is that the plain language of R.C. 2933.82 indicates the General Assembly's intent that the statute applies to evidence in the possession of governmental entities at the time the statute was enacted.  Roberts's primary support for this argument is that R.C. 2933.82(C)(1)(b) requires the newly created preservation-of-biological-evidence task force to "[r]ecommend practices, protocols, models, and resources for the cataloging and accessibility of preserved biological evidence *already in the possession of* governmental evidence-retention entities."  (Emphasis added.)

{¶ 24} As additional support, Roberts cites R.C. 2933.82(A)(1)(a)(ii), which defines "biological evidence" as "[a]ny item that contains blood, semen, hair, saliva, skin tissue, fingernail scrapings, bone, bodily fluids, or any other identifiable biological material *that was collected as part of a criminal investigation or delinquent child investigation* and that reasonably may be used to incriminate or exculpate *any person* for an offense or delinquent act."  (Emphasis added.)  R.C. 2933.82(B)(2) also states that the requirement to secure biological evidence applies to evidence that "was in the possession" of a governmental

evidence-retention entity during the investigation and prosecution of specified offenses. Also, Roberts argues that R.C. 2933.82(B)(4) provides that when a defendant, such as himself, requests that a government entity "*that possesses* biological evidence" prepare an inventory of that evidence, the government agency shall do so. (Emphasis added.) Thus, Roberts argues that R.C. 2933.82 repeatedly states that governmental evidence-retention entities must retain biological evidence that was already in their possession at the time the statute was enacted. *See, e.g.,* R.C. 2933.82(B)(3), (5), and (7).

{¶ 25} We agree with Roberts that the language of R.C. 2933.82 is clear. The General Assembly repeatedly used the phrases "was in the possession" or "possesses," which shows an unequivocal intent that the duty to preserve and catalog biological evidence applies to evidence that was in the government's possession at the time of the statute's enactment. The General Assembly did not specify that the statute was to apply only to evidence that would come into the possession of the governmental entities after its enactment. Moreover, the General Assembly did not qualify the word "possesses" based on when the evidence was gathered.

{¶ 26} Our holding is supported by the historical context during which this statute was enacted. Because DNA and biological evidence play such significant roles in the judicial system, it is imperative that law-enforcement agencies handle all evidence with extreme care. We believe that it was in that spirit that the General Assembly enacted R.C. 2933.82.

### *R.C. 2933.82 is not a retroactive statute*

{¶ 27} The state argues that because Roberts was convicted in 1997, the statute is not applicable to evidence collected in his case unless it is applied retroactively. The state argues that because R.C. 2933.82 contains no express intent that it apply retroactively, it applies prospectively only. The state begins by citing the Ohio Constitution, Article II, Section 28, which provides that the

General Assembly "shall have no power to pass retroactive laws." The state also relies on R.C. 1.48, which provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." The state argues that it would be unfair to expect the state to have collected evidence in Roberts's 1997 case in accordance with procedures adopted in 2010.

{¶ 28} Roberts counters that this case is not about retroactivity. Roberts asserts that the plain language of the statute requires that the obligation to preserve and catalog evidence applies to biological evidence collected after the statute was enacted as well as to biological evidence in the possession of law-enforcement agencies at the time of the statute's enactment in July 2010. We agree.

{¶ 29} The retroactivity analysis does not apply to this case and should not have been applied by the court of appeals. We have held that " '[a] statute is not retroactive merely because it draws on antecedent facts for a criterion in its operation.' " *Schoenrade v. Tracy*, 74 Ohio St.3d 200, 204, 658 N.E.2d 247 (1996), quoting *United Eng. & Foundry Co. v. Bowers*, 171 Ohio St. 279, 282, 169 N.E.2d 697 (1960). Therefore, the use of prior facts, or material, does not make application of the statute retroactive.

{¶ 30} Here, R.C. 2933.82 "draws upon antecedent facts" because it applies to biological evidence that is "already in the possession of" or "was in the possession of" governmental entities at the time it was enacted. These phrases do not make R.C. 2933.82 retroactive, especially considering that there is no showing that the General Assembly expressly intended for the statute to apply retroactively. Again, the historical setting in which R.C. 2933.82 was enacted supports our holding.

### Conclusion

{¶ 31} We hold that the obligation to preserve and catalog criminal-offense-related biological evidence imposed upon certain government entities by

R.C. 2933.82 applies to evidence in the possession of those entities at the time of the statute's effective date. Therefore, we reverse the judgment of the court of appeals and remand the cause to the trial court to order the preservation and cataloguing of the physical evidence from Roberts's case, pursuant to his motion, and for any other proceedings that may become necessary.

Judgment reversed<br>and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

_____

Daniel G. Padden, Guernsey County Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Kristopher A. Haines and Craig M. Jacquith, Assistant Public Defenders, for appellant.

Paul A. Dobson, Wood County Prosecuting Attorney, and David E. Romaker Jr., Assistant Prosecuting Attorney, urging affirmance on behalf of amicus curiae Ohio Prosecuting Attorneys Association.

Davis Polk & Wardwell, L.L.P., and Sharon Katz, urging reversal on behalf of amicus curiae the Innocence Network.

_____