[Cite as *Ayers v. Cleveland*, 2017-Ohio-8571.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105074**

**DAVID AYERS**

PLAINTIFF-APPELLEE/
CROSS-APPELLANT

vs.

**CITY OF CLEVELAND, ET AL.**

DEFENDANTS-APPELLANTS/
CROSS-APPELLEES

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-846683

**BEFORE:** E.T. Gallagher, J., Kilbane, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** November 16, 2017

**ATTORNEYS FOR APPELLANTS**

Robert M. Wolff
Mark V. Webber
Littler Mendelson P.C.
1100 Superior Avenue, 20th Floor
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michele L. Berry
The Law Office of Michele L. Berry
114 East 8th Street
Cincinnati, Ohio 45202

Russell Ainsworth
Ruth Z. Brown
Michael Kanovitz
Loevy & Loevy
311 North Aberdeen Street, 3rd Floor
Chicago, Illinois 60607

**For David Leneghan**

David M. Leneghan
200 Treeworth Blvd., Suite 200
Broadview Heights, Ohio 44147

EILEEN T. GALLAGHER, J.:

{¶1}  Defendant-appellant/cross-appellee, city of Cleveland ("the City"), appeals from the judgment of the common pleas court granting summary judgment in favor of plaintiff-appellee/cross-appellant, David Ayers ("Ayers"), on his claim for indemnification pursuant to R.C. 2744.07(A)(2).   The City raises the following assignment of error for review:

> 1.  The trial court erred as a matter of law when it granted Plaintiff's motion for summary judgment and denied Defendant's motion for summary judgment seeking dismissal of Plaintiff's claim for indemnification under R.C. 2744.07(A)(2) which limits standing to assert such claims to employees of political subdivisions.  The court further erred in failing to grant summary judgment to Defendant because the underlying debts of the police officers to Plaintiff had been extinguished and there was no debt for the City to indemnify.

{¶2} In his cross-appeal, Ayers raises the following assignments of error:

> 1. The trial court erroneously omitted the $390,000 award of attorney fees and costs in the underlying civil rights case.

> 2.  Plaintiff is entitled to statutory interest on the Ayers judgment.

{¶3} After careful review of the record and relevant case law, we reverse the trial court's judgment granting summary judgment in favor of Ayers and remand for proceedings consistent with this opinion.   We further find Ayers's cross-appeal to be moot based on our resolution of the City's appeal.

## I.  Procedural History

### A.  Underlying Criminal Case

{¶4} In December 2000, Ayers was convicted of aggravated murder, aggravated burglary, and aggravated robbery.  The convictions stemmed from the murder and robbery of seventy-six year old victim, Dorothy Brown.[1]  Ayers was sentenced to a term of 20 years to life on the

---

[1]  For underlying facts, *see Ayers v. Cleveland*, N.D.Ohio No. 1:12-CV-753, 2013 U.S. Dist.

aggravated murder count, ten years on the aggravated burglary count, and ten years on the aggravated robbery count. Each term was ordered to be served consecutively.

{¶5} On September 12, 2002, this court affirmed Ayers's convictions but reversed his sentence and remanded for resentencing. *State v. Ayers*, 8th Dist. Cuyahoga No. 79134, 2002-Ohio-4773. On remand, Ayers was again sentenced to life in prison. The Ohio Supreme Court denied leave to appeal with one justice dissenting. *State v. Ayers*, 98 Ohio St.3d 1424, 2003-Ohio-259, 782 N.E.2d 78 (Pfeiffer, J., dissenting).

{¶6} In January 2004, Ayers filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 with the United States District Court for the Northern District of Ohio, Eastern Division. The petition raised the following grounds for relief (1) the prosecutor willfully withheld exculpatory evidence from the defense; (2) the prosecutor engaged in misconduct by withholding incriminating evidence, making improper remarks in his closing argument, and extracting a jailhouse confession from Ayers on the eve of trial; (3) Ayers's Sixth Amendment right to counsel was violated when the jailhouse informant, acting as a state agent, obtained the confession; and (4) the evidence was insufficient to sustain the convictions. On September 27, 2007, the district court denied Ayers's petition. *Ayers v. Bradshaw*, N.D.Ohio No. 1:04CV0133, 2007 U.S. Dist. LEXIS 71946 (Sept. 27, 2007).

{¶7} On appeal, the United States Court of Appeals for the Sixth Circuit reversed the decision of the district court and remanded the case with instructions for the district court to grant a conditional writ of habeas corpus, giving the state of Ohio 180 days within which to provide Ayers a new trial or, failing that, to release him. The Sixth Circuit stated, in pertinent part:

LEXIS 25992, * 3-12 (Feb. 25, 2013).

Because the State "intentionally creat[ed] a situation likely to induce [Ayers] to make incriminating statements without the assistance of counsel," * * *  we hold that Ayers's Sixth Amendment right to counsel was violated, and that the Ohio Court of Appeals unreasonably ruled to the contrary.

*Ayers v. Hudson*, 623 F.3d 301 (6th Cir.2010).

{¶8} Following the Sixth Circuit's judgment, the state chose not to pursue a new trial against Ayers.   Ayers was released from prison on September 12, 2011.

### B.   Federal Court Complaint

{¶9} On March 27, 2012, Ayers filed a complaint in the district court, alleging federal and state law claims against Detectives Michael Cipo ("Cipo"), Denise Kovach ("Kovach"), and the City (collectively "the defendants").   On July 20, 2012, Ayers filed an amended complaint, raising causes of action for violations of due process, malicious prosecution, interference with the right to counsel, failure to intervene, civil conspiracy, intentional misrepresentation, intentional infliction of emotional distress, negligent supervision, respondeat superior, and indemnification under R.C. 2744.07(A)(2).   The complaint alleged that Cipo and Kovach violated Ayers's Sixth Amendment right to counsel by using jail informant Donald Hutchinson to unlawfully interrogate Ayers.   In addition, Ayers alleged that Cipo and Kovach fabricated evidence and perjured themselves in an effort to convict Ayers.

{¶10} The defendants moved to dismiss, or in the alternative, for summary judgment.   On February 25, 2013, the district court granted summary judgment in favor of the City, dismissing all claims raised against the City.   With respect to Ayers's cause of action for indemnification against the City, the district court found that the claim was premature, stating:

> The duty to indemnify accrues upon issuance of a judgment against the employee for compensatory damages caused by an act or omission in connection with a governmental function.   Should the political subdivision fail to uphold its duty, the statute outlines a mechanism for Ohio courts to consider the employee's claims

and to "order the political subdivision to defend the employee in the action." Therefore, the indemnification claim does not survive.

*Ayers*, N.D.Ohio No. 1:12-CV-753, 2013 U.S. Dist. LEXIS 25992, * 52 (Feb. 25, 2013).

**{¶11}** In March 2013, the matter proceeded to a jury trial against Cipo and Kovach on Ayers's remaining claims for violation of due process, malicious prosecution (both federal and state), interference with the right to counsel, conspiracy, and intentional infliction of emotional distress. At the conclusion of trial, a jury returned a verdict in favor of Ayers, and the trial court entered judgment against the detectives in the amount of $13,210,000. On May 9, 2013, the judgment was enlarged to include an additional $390,000 in costs and attorneys fees.[2]

**{¶12}** After the civil judgment was entered against Cipo and Kovach, the City's Chief Assistant Director of Law, Joseph Scott ("defendant Scott"), on behalf of the detectives, offered to assign to Ayers any indemnification claims that the detectives might have had against the City in exchange for an agreement by Ayers to forebear collection efforts against them personally. *See* City's exhibit No. 1, First Set of Admissions, No. 5. In a letter dated March 27, 2013, Ayers, through counsel, rejected the offer. Ayers subsequently rejected a similar offer to assign the detectives' indemnification rights in May 2013.

### C. Ayers Attempts to Reinstate his Indemnification Claim in the District Court

**{¶13}** Following the entry of judgment against the detectives, the City did not indemnify Cipo or Kovach pursuant to R.C. 2744.07(A)(2). In addition, neither Cipo or Kovach sought to enforce their right to indemnification under the statute, or filed a grievance against the City pursuant to the procedure set forth in the parties' Collective Bargaining Agreement ("CBA").

---

[2] The judgment against the detectives was affirmed by the Sixth Circuit on December 2, 2014. *Ayers v. Cleveland*, 773 F.3d 161 (6th Cir.2014).

*See* Article XXII of the CBA, pp. 41-44. Instead, the City entered into an agreement with bankruptcy counsel, David M. Leneghan ("defendant Leneghan"), on April 24, 2013, "to assist [Cipo and Kovach] with personal, individual bankruptcy proceedings" in an effort to secure the discharge of their debt.

{¶14} Cipo passed away on July 9, 2013.[3] On July 29, 2013, Leneghan filed a petition for Chapter 7 bankruptcy on Kovach's behalf. The petition listed Ayers as a creditor and the $13,210,000 judgment as a debt. In the course of discovery in this matter, Leneghan admitted "that at some point between March 8, 2013 and July 29, 2013, Joseph Scott communicated to [him] that language in the [CBA] limited Cleveland's obligation to indemnify Kovach for the Ayers Judgment to $1 million." Ayers exhibit No. 33, Leneghan's Response to Plaintiff's Request for Admissions, No. 9. On November 12, 2013, the bankruptcy court discharged Kovach's personal liability for the $13,210,000 judgment debt.

{¶15} Following the bankruptcy proceedings, Ayers filed a motion with the district court to reinstate his state law indemnification claim against the City. On May 6, 2014, the district court granted Ayers's motion to reinstate the claim. However, on July 11, 2014, the district court vacated its May 6, 2014 order and dismissed Ayers's state law indemnification claim for lack of subject matter jurisdiction. In its opinion, the court declined to exercise supplemental jurisdiction, stating:

> Plaintiff Ayers's indemnification claim is a state law claim. It does not arise out of any federal statutes and it does not relate to the violation of any federal rights. Further, the parties to this case are not diverse. Thus, the district court does not have original jurisdiction over this claim.

---

[3] It is unclear from this record if Ayers, as a creditor, presented a claim in the probate court against Cipo's estate following his death.

* * *

After considering these factors, the Court declines to exercise supplemental jurisdiction. The state courts are best suited to decide whether a plaintiff rather than an employee can bring a direct action for indemnification under claim Ohio Revised Code § 2744.07(A) and whether the City of Cleveland's collective bargaining agreement's $1 million cap on indemnification is compatible with Ohio law.

*Ayers v. Cleveland*, N.D.Ohio No. 1:12-CV-753, 2014 U.S. Dist. LEXIS 94472, * 3-4 (July 11, 2014).

{¶16} On November 5, 2014, Ayers moved the bankruptcy court to reopen Kovach's bankruptcy proceeding "for the limited purpose of clarifying the applicability of the discharge injunction in connection with the pursuit of indemnification proceeds against [the City]." The motion was granted on December 10, 2014. On February 19, 2015, the bankruptcy court issued an order, stating, in relevant part:

IT IS HEREBY ORDERED, that it will not be a violation of the discharge injunction if David Ayers pursues a state court action against the Debtor's name only and only against the amount of indemnification, if any, which may be available against Debtor's former employer, the City of Cleveland. The permanent injunction is hereby modified for cause as set forth herein.

### D. Ayers's Indemnification Claim Against the City in the Common Pleas Court

{¶17} On June 8, 2015, Ayers filed the present action against the City and defendants Scott and Leneghan in the court of common pleas. The complaint asserted various causes of action against the City, including claims for statutory indemnification pursuant to R.C. 2744.07(A)(2), tortious interference, breach of contract, aiding and abetting, abuse of process, unjust enrichment, specific performance, and civil conspiracy. The complaint further alleged causes of action against defendants Scott and Leneghan for tortious interference, aiding and abetting, abuse of process, and civil conspiracy.

{¶18} On November 5, 2015, the trial court granted defendant Leneghan's motion to dismiss the abuse of process claims levied against him, but denied his request to dismiss the remaining claims of tortious interference, conspiracy, and aiding and abetting.

{¶19} Following discovery, the parties agreed to address the threshold question of whether Ayers is entitled to seek indemnification from the City pursuant to R.C. 2744.07(A)(2). On August 9, 2016, Ayers filed a motion for partial summary judgment on the limited issue of whether R.C. 2744.07(A)(2) affords Ayers relief. On the same day, the City and defendant Scott filed a joint motion for partial summary judgment, arguing that Ayers lacked standing to bring an indemnification claim against the City under R.C. 2744.07(A)(2).

{¶20} On October 12, 2016, the trial court granted Ayers's motion for partial summary judgment on the issue of indemnification and denied the City and defendant Scott's motion for summary judgment. The court determined that "the right to indemnification attached upon the final judgment in the federal case and Ayers has the right to proceed directly against [the City] to recover the judgment." Accordingly, the trial court entered judgment against the City in the amount of $13,210,000 on the statutory indemnification claim and dismissed all other claims levied against the City and defendants as moot.

{¶21} The City now appeals from the trial court's judgment granting summary judgment in favor of Ayers. In addition, Ayers cross-appeals the trial court's failure to include an award of attorney fees, costs, and statutory interest in its October 12, 2016 judgment.

## II. Law and Analysis

{¶22} In its sole assignment of error, the City argues the trial court erred by granting summary judgment in favor of Ayers on his statutory indemnification claim under R.C. 2744.07(A)(2).

**{¶23}** We review the grant of summary judgment de novo using the standard set forth in Civ.R. 56. *Argabrite v. Neer*, Slip Opinion No. 2016-Ohio-8374, ¶ 14. Summary judgment is appropriate only when "[1] no genuine issue of material fact remains to be litigated, [2] the moving party is entitled to judgment as a matter of law, and, [3] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*

**{¶24}** R.C. Chapter 2744 governs political subdivision tort liability. In this case, Ayers sought summary judgment under R.C. 2744.07(A)(2) to compel the City to indemnify Kovach for the full amount of the federal court judgment rendered against Kovach, plus interest. On appeal, the parties dispute whether R.C. 2744.07(A)(2) provides creditors with standing to enforce the statute, as the trial court found, or whether R.C. 2744.07(A)(2) "only creates a cause of action for employees of political subdivisions," as the City contends.

**{¶25}** R.C. 2744.07(A)(2) provides:

> Except as otherwise provided in this division, a political subdivision shall indemnify and hold harmless an employee in the amount of any judgment, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or federal court or as a result of a law of a foreign jurisdiction and that is for damages for injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of his employment or official responsibilities.

The parties' CBA contains a similar provision at Article XXVIII, ¶ 62.

**{¶26}** On its face, we agree with the trial court that "the plain reading of [R.C. 2744.07(A)(2)] is to indemnify an employee of a political subdivision against whom a judgment is rendered arising from an act or failure to act in the course of employment while acting in good faith." The statute does not provide a procedure for obtaining indemnification and suggests that

the political subdivision's duty to indemnify and hold harmless attaches immediately upon the issuance of the judgment against the employee. *See Paolisso v. Edison Local Bd. of Edn.*, 7th Dist. Jefferson No. 90-J-36, 1992 Ohio App. LEXIS 490, * 10 (Feb. 5, 1992) ("In accordance with the plain meaning of the statute, it logically follows that the duty to indemnify and hold harmless arises at the time judgment is entered.").

{¶27} In this case, the City did not indemnify Kovach or Cipo. Moreover, the City has provided no evidence to suggest the detectives were not entitled to indemnification pursuant to the conditions set forth in the statute. As stated by the trial court, the City, throughout the federal proceeding, "took the position that [the detectives'] alleged acts were done in good faith and within the scope of the detectives' employment and official duties." Thus, it appears that the City did, in fact, fail to satisfy its statutory obligation to hold its employees harmless under R.C. 2744.07(A)(2). To be clear, however, the City's obligations under R.C. 2744.07(A)(2) are owed to Cipo and Kovach. As such, it is their rights, as City employees, that were infringed upon by the City's failure to comply with the statute. However, Cipo and Kovach are not parties to this case and this court has no authority to remedy the shortfalls of the City's dealings with its employees.

{¶28} Here, the limited question before this court is whether Ayers, as a judgment creditor, has standing to bring a private cause of action against the City to enforce the City's obligations to Kovach and Cipo under R.C. 2744.07(A)(2). We find he does not.

{¶29} The doctrine of standing requires a litigant to be in the proper position to assert a claim, and the party's inquiry must be within the zone of interest intended to be protected or regulated by the statute. *Taylor v. Academy Iron & Metal Co.*, 36 Ohio St.3d 149, 152, 522 N.E.2d 464 (1988). In establishing the state's entire administrative and regulatory scheme, the

legislature expressly authorizes and designates the authority to enforce particular regulations and statutes to certain persons and agencies. *New Boston Coke Corp. v. Tyler*, 32 Ohio St.3d 216, 218, 513 N.E.2d 302 (1987). It is a basic doctrine of statutory construction that when the legislature has authorized an action to be instituted by a particular person or office, the suit may not be instituted by another. *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 521 N.E.2d 1099 (12th Dist.1987).

{¶30} In determining whether statutes may create a private cause of action for enforcement, the Ohio Supreme Court has held that a "statutory policy" may not be implemented by the Ohio courts in a private civil action absent a clear implication that such a remedy was intended by the Ohio Legislature. *Fawcett v. G. C. Murphy & Co.*, 46 Ohio St.2d 245, 249, 348 N.E.2d 144 (1976). Ohio courts apply a three-part test adopted from *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), for determining when a private cause of action arises by implication under a particular statute. The three prongs of the test ask (1) are the plaintiffs in a class for whose special benefit the statute was enacted; (2) is there any indication of legislative intent, explicit or implicit, either to create or deny a private cause of action; and (3) is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiffs? *Strack v. Westfield Cos.*, 33 Ohio App.3d 336, 337, 515 N.E.2d 1005 (9th Dist.1986); *Elwert v. Pilot Life Ins. Co.*, 77 Ohio App.3d 529, 602 N.E.2d 1219 (1st Dist.1991).

{¶31} After careful review, we find Ayers cannot satisfy the foregoing criteria, because (1) his asserted claims are not within the zone of interest intended to be protected or regulated by R.C. 2744.07(A)(2), and (2) a private cause of action by a judgment creditor does not arise by implication under R.C. 2744.07(A)(2). In our view, the purpose of R.C. 2744.07(A)(2) is not to benefit third parties who have been injured by the acts of a state employee, but rather, to shield the

employee from financial ruin resulting from an act committed in good faith and within the scope of employment. As referenced by Ayers in his appellate brief, the drafters' intent in constructing R.C. 2744.07(A)(2) was to "insulate Teflon-coated employees from liability." Thus, the explicit purpose of the statute is to protect municipal employees; not to provide an avenue for creditors to collect a monetary judgment from a political subdivision.

{¶32} In addition, we decline to adopt Ayers's position that R.C. 2744.07(A)(2) has a "secondary purpose of ensuring that members of the public harmed by public employees' tortious conduct will be made whole." While making a plaintiff-creditor "whole" may be incidental to the protections afforded to employees under R.C. 2744.07(A)(2), the language of the statute in no way suggests that it was enacted to protect the interests of judgment creditors. *See Click v. Springfield*, 2d Dist. Clark No. CA 2342, 1988 Ohio App. LEXIS 742 (Mar. 4, 1988) (stating that the sole legislative intent of R.C. 2744.07 is to hold employees harmless from any potential liability). If, for example, R.C. 2744.07(A)(2) was created to benefit third parties, the statute would extend its protections to all acts committed by employees of the political subdivision in the course of their employment, and not just those committed in good faith.

{¶33} Accordingly, we find R.C. 2744.07(A)(2) does not provide Ayers with a private cause of action against the City to enforce its statutory obligation to indemnify its employees. Regardless of this court's disfavor with the City's conduct in this matter, Ayers lacked legal standing to pursue a claim for indemnification under R.C. 2744.07(A)(2) and providing him with a remedy under the statute would be inconsistent with its underlying purpose.

{¶34} The dissent suggests that our holding creates an "unrecognized and unintended exception to the law" by finding "that political subdivisions will not be obligated to indemnify judgments against its employee pursuant to R.C. 2744.07." To be clear, that is not the holding of

this court. In fact, it is the exact opposite. As stated, the clear language of the statute obligates the political subdivision to indemnify an employee in the amount of any judgment "immediately upon the issuance of the judgment against the employee" if the conditions of R.C. 2744.07(A)(2) are met. *See* ¶ 26, *supra*. However, when the political subdivision fails or declines to comply with that obligation, only the employee has standing to enforce its rights under R.C. 2744.07(A)(2), not a third-party creditor. To the extent a third-party creditor believes the political subdivision's conduct was inappropriate, it may pursue legal action against the political subdivision on other grounds, as Ayers has in this case.

{¶35} We further note that Ayers has not argued, or otherwise set forth a basis for this court to conclude, that he shared a sufficient relationship with the nonparty detectives such that he had third-party standing to pursue this action. *See N. Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005, 871 N.E.2d 586, ¶ 14. (To have standing, the general rule is that "a litigant must assert its own rights, not the claims of third parties."). Any benefit Ayers claims under R.C. 2744.07(A)(2) is merely incidental to the statutory rights afforded to the detectives under the statute.

{¶36} Consistent with our statutory interpretation, Ohio courts analyzing R.C. 2744.07(A)(2) have overwhelmingly held that the statute does not create a private cause of action for judgment creditors. In *Piro v. Franklin Twp.*, 102 Ohio App.3d 130, 141, 656 N.E.2d 1035 (9th Dist.1995), the Ninth District held that R.C. 2744.07(A)(2) does not remove a political subdivision's immunity; rather, it obligates the political subdivision to indemnify its employees if they are found liable for a good faith act that is related to a governmental or proprietary function. *Id.* The *Piro* court emphasized that "requiring the subdivision to indemnify its employees is entirely different from imposing direct liability on the subdivision." *Id.*

{¶37} In his complaint, Ayers did not allege that the City was directly liable for the acts of its employees. Rather, Ayers argued that he "has legal standing *to enforce his judgment* against the City as a judgment creditor." (Emphasis added.) However, "R.C. 2744.07(A)(2) creates a statutory obligation to indemnify *rather than a means to enforce a judgment*." (Emphasis added.) *Stengel v. Columbus*, 74 Ohio App.3d 608, 612, 600 N.E.2d 248 (10th Dist.1991). Thus, Ayers cannot invoke R.C. 2744.07(A)(2) to collect a judgment rendered against Cipo and Kovach. Rather, it is the detectives, alone, who have standing to enforce their statutory right to indemnification. If, as here, the employee does not seek to remedy the political subdivision's failure to indemnify, the judgment creditor is left to satisfy its judgment from the employee — i.e., the liable party.

{¶38} Federal courts have reached similar conclusions. In an analogous case involving an indemnification cause of action brought against the city of Cleveland by wrongfully imprisoned plaintiffs, the United States District Court for the Northern District of Ohio held that "the right of indemnification [under R.C. 2744.07(A)(2)] is the right of the employee; it does not create a cause of action or any enforceable right against the city in favor of a plaintiff who sues a municipal employee." *Ajamu v. Cleveland*, N.D.Ohio No. 1:12CV1320, 2016 U.S. Dist. LEXIS 98127, * 1093 (July 27, 2016), citing *Maruschak v Cleveland*, N.D.Ohio No. 1:09 CV 1680, 2010 U.S. Dist. LEXIS 52811, at *6, fn. 8 (May 28, 2010). *See also Shoup v. Doyle*, S.D.Ohio No. 3:12-CV-351, 974 F.Supp.2d 1058 (Sept. 24, 2013) ("R.C. 2744.07(A)(2) does not provide Shoup with a cause of action against the City or anyone; it imposes a duty on the City to defend its employees from her claims.").

{¶39} In an effort to avoid the implications of the foregoing precedent, the trial court attempted to distinguish the cases on grounds that they involved motions to dismiss that were

raised prior to a final judgment against an employee of the political subdivision. We are not persuaded by the trial court's suggestion that R.C. 2744.07(A)(2) provides Ayers with standing to pursue a cause of action against the City, in contravention of the holdings in *Ajamu*, *Marushak*, and *Shoup*, merely because this case involves a post-judgment complaint for indemnification. In our view, the federal court's interpretation of R.C. 2744.07(A)(2), and the restrictions placed on those who are entitled to enforce the statute apply equally to the procedural and factual circumstances presented in this case. Ayers's inability to establish his standing to pursue a private cause of action under R.C. 2744.07(A)(2) is not predicated on the procedural timing of the allegation, but is based on the express language and legislative intent of the statute.

{¶40} Further, we are equally unpersuaded by the case law relied on by the trial court in its decision granting summary judgment in favor of Ayers. The trial court correctly noted that the United States District Court for the Northern District of Ohio has permitted a similar indemnification cause of action to proceed against a political subdivision. In *Vaughan v. Shaker Hts.,* N.D.Ohio No. 1:10CV0609, 2011 U.S. Dist. LEXIS 136198 (Nov. 28, 2011), *aff'd in part, rev'd in part*, 514 Fed.Appx. 611 (6th Cir. 2013), the plaintiff sought to hold the city of Shaker Heights liable for the compensatory damages resulting from the actions of a Shaker Heights Police detective committed within the scope of his employment. Ultimately, the *Vaughan* court denied the city's motion to dismiss the plaintiff's indemnification claim against the City, stating that R.C. 2744.07(A)(2) "requires the City of Shaker Heights to indemnify [the detective]'s conduct for compensatory damages if that conduct was carried out in good faith within the scope of his employment." *Id*. at * 14.

**{¶41}** After careful consideration, we decline to follow *Vaughan*. While *Vaughan* certainly supports Ayers's position, it is evident that the holding in *Vaughan* is an outlier and its precedential value is minimal given the federal court's more recent holding in *Ajamu*.

**{¶42}** We find the trial court's reliance on *Memphis v. Roberts,* 528 S.W.2d 201 (Tenn.1975), to be equally unpersuasive. In *Memphis*, the appellant-city sought review of a judgment of the trial court in favor of the employee-fireman in his action to compel the city to indemnify him and pay judgments entered against him for damages arising out of his performance of his official duties.[4] Thus, *Memphis* involves an employee's proper attempt to enforce the political subdivision's obligation to indemnify him and does not address the issue of whether a judgment creditor has standing to pursue such an action. The *Memphis* case only addressed the issue of whether an employee is required to satisfy the judgment rendered against him as a condition precedent to indemnity by the city — an issue not presently before this court. Accordingly, the trial court's reliance on *Memphis* is factually and legally misplaced.

**{¶43}** Based on the foregoing, and in accordance with Ohio federal and state precedent, we find Ayers's claim of indemnification against the City fails as a matter of law. Accordingly, we find the trial court erred in granting summary judgment in favor of Ayers.

**{¶44}** Our holding, however, does not resolve Ayers's case entirely. While Ayers does not have standing to enforce the City's obligations under R.C. 2744.07(A)(2), his remaining claims for tortious interference, breach of contract, aiding and abetting, abuse of process, unjust enrichment, specific performance, and civil conspiracy are no longer rendered moot and must be resolved. On remand, the trial court shall address Ayers's remaining causes of action to

---

[4] Ultimately, the *Memphis* court rejected the city's argument that the fireman-employee was required to satisfy the judgment rendered against him as a condition precedent to indemnity by

determine whether the defendants' actions following Ayers's jury award, including the City's failure to comply with the R.C. 2744.07(A)(2) and the circumstances surrounding Kovach's bankruptcy proceedings, subjected the City or defendants Scott and Leneghan to civil liability.

**{¶45}** We recognize that Ayers and the City have conflicting interpretations of the CBA and "the total amount of indemnification the City is obligated to pay on behalf of one or more officer defendants." [5] However, a legal interpretation of the indemnification rights and responsibilities under the CBA is not currently before this court. Nevertheless, we reference the disagreement concerning the amount the City was required to indemnify Kovach only to highlight the apparent conflict of interests in having the City represent Kovach following the civil judgment. Given the City's interpretation of the CBA and their interest in indemnifying Kovach for the minimum amount required under the CBA, it is unclear whether the City's representation of Kovach was intended to protect its own best interests, or the personal interests of its employee. In our view, these circumstances relate directly to the actions of the City and the representations

---

the city.

[5] The City contends that the CBA places a $1,000,000 cap of the City's statutory obligations. In support of its position, the City cites paragraph 66 of the CBA, which provides:

> The total amount of indemnification to which the City is obligated to pay on behalf of one or more officer defendants or potential defendants arising out of a transaction or occurrence, which is the subject matter of allegations against the officers and/or co-defendants, shall be limited to the lower of either One Million Dollars ($1,000,000.00), or the amount of any deductible, self-insured retention, or uninsured primary level, under any policy of insurance paid by the City which provides coverage for the transaction or occurrence.

In opposing the City's interpretation, Ayers cites Paragraph 68 of the CBA, which provides that the CBA's provisions regarding the Legal Representation of Officers "shall not be construed in any way to impair, alter, limit, modify, abrogate, or restrict any * * * benefit provided by law to the * * * officer." Ayers argues that the unequivocal language set forth under Paragraph 68 reflects the signatories' agreement that the CBA does not govern or restrict a defendant-officer's right to be held harmless "*in the amount of any judgment*" pursuant to R.C. 2744.04(A)(2). (Emphasis added.)

made to Kovach prior to the bankruptcy proceedings, and resolution of these issues will ultimately shed light on Kovach's motivation to forego her rights under R.C. 2744.07(A)(2) and pursue personal bankruptcy.

{¶46} We further note that the conclusions reached by this court regarding the City's failure to comply with R.C. 2744.07(A)(2), and perhaps future judgments on Ayers's remaining causes of action, may have implications in Kovach's bankruptcy case. While the bankruptcy court did not have the authority to "to effectively provide an assignment of Kovach's statutory indemnification rights to Ayers" as the dissent suggests, the court has demonstrated a willingness to modify the discharge injunction if deemed necessary. Upon review of the bankruptcy materials attached to the parties' motions for summary judgment, it is evident that while Ayers was listed as a creditor in the petition documents, Kovach's right to indemnification was not referenced. Thus, it is unclear from this record whether the bankruptcy court was aware of Kovach's right to indemnification and, if it was not, whether the City's obligation under the statute would have altered the bankruptcy court's decision to grant Kovach a discharge. We reiterate that Kovach, unlike Ayers, is an intended beneficiary of R.C. 2744.07(A)(2) and she is entitled to enforce the City's obligations under both the statute and the CBA.

{¶47} With respect to the dissent's concerns with the implications this opinion may have on the City's future dealings with its employees, we emphasize that our resolution of this appeal relies solely on our interpretation of R.C. 2744.07(A)(2). It is not an endorsement of the City's actions in this matter. To the contrary, the City's post-judgment involvement in the detectives' representation appears to be, as characterized by Ayers, "unprecedented." However, this court must remain cognizant that while the City's actions may appear unsettling on the surface, allegations pertaining to the legality of the City's post-judgment conduct has yet to be resolved by

a trier of fact. At this point, Ayers and the City have not been afforded the opportunity to develop the facts through litigation, and conclusory statements concerning the interaction between the City and the officers between the civil judgment and the bankruptcy proceedings are premature at this time. We have no information regarding the detective's intentions or participation in the post-judgment legal maneuvers, or whether the Cleveland Police Patrolmen's Association had any knowledge of the City's recommendation to the detectives to enter bankruptcy in lieu of enforcing their indemnification rights. Similarly, it is equally unclear whether the City zealously represented its employees or merely protected its own interests.

{¶48} The dissent's concerns with the City's conduct are justified. However, it is this court's hope that this decision will avoid future analogous fact patterns in this county by strongly reiterating to employees of political subdivisions that, subject to restricting contractual language, they have the absolute right to be held harmless for judgments rendered against them under R.C. 2744.07(A)(2), regardless of the representations made to them by the political subdivision. Moreover, if the developed facts of this case demonstrate, as the dissent concludes, that the City perpetrated an "undisclosed conflict of interest," "engaged in practices" that are against public policy, or illegally "orchestrated a scheme" to deprive Ayers of the judgment, the City will be held accountable for their conduct upon resolution of Ayers's remaining claims.

{¶49} Based on the foregoing, we find R.C. 2744.07(A)(2) does not provide Ayers with standing to initiate a private cause of action against the City. The City's sole assignment of error is sustained. Having determined Ayers is not entitled to enforce R.C. 2744.07(A)(2) against the City, Ayers's first and second cross-assignments of error are rendered moot.

{¶50} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS WITH SEPARATE OPINION

MARY EILEEN KILBANE, P.J., DISSENTING:

{¶51} I respectfully dissent. I would affirm the judgment of the trial court and proceed to address Ayers's cross-claim.

{¶52} Ayers was convicted in December 2000. After suffering over a decade of wrongful imprisonment, Ayers prevailed on his federal habeas corpus claims and was released from prison in 2011. He subsequently prevailed in a federal action against Kovach and Cipo for violating his civil rights. The district court originally dismissed his claim against the City for statutory indemnification, finding it was premature until a judgment was rendered against the detectives.

{¶53} After judgment was rendered, the district court declined to exercise supplemental jurisdiction over the state law claim. Instead, the district court directed Ayers to pursue the statutory indemnification claim in state court. In doing so, the district court "reject[ed] the notion that only Detectives Cipo and Kovach as employees [could] assert a claim for indemnification." *Ayers v. Cleveland*, D.D.C. No. 1:12-CV-00753, 2014 U.S. Dist. LEXIS 72116, *5 (May 6, 2014). The court reasoned that "[t]o hold otherwise would defeat the

statute's purposes of sparing municipal employees from having to pay a judgment prior to indemnification and to ensure members of the public harmed by municipal employees are made whole." *Id.* The district court further found that

> [t]he state courts are best suited to decide whether a plaintiff rather than an employee can bring a direct action for indemnification under * * * Ohio Revised Code § 2744.07(A)(2) and whether the City of Cleveland's collective bargaining agreement's $1 million cap on indemnification is compatible with Ohio law.

*Ayers*, N.D. Ohio No. 1:12-CV-00753, 2014 U.S. Dist. LEXIS 94472, *4.

{¶54} In the instant case, the sole issue decided by the lower court's decision was whether R.C. 2744.07(A)(2) required the City to indemnify its employees and pay Ayers the judgment rendered in the federal civil rights case. The trial court found that it did. For this reason, the trial court did not reach Ayers's alternative claim for indemnification based on the City's collective bargaining agreement with the detectives and found all of the remaining counts in Ayers's complaint moot. Although the trial court did not address Ayers's claim for attorney fees and costs, this court has jurisdiction over this appeal under Civ.R. 54(B) and because the trial court found there was no just reason for delay.

{¶55} The majority finds that the City was obligated to indemnify and hold Kovach and Cipo harmless from the judgment pursuant to the conditions of R.C. 2744.07(A)(2). However, the majority concludes that only Kovach and Cipo had standing to enforce the mandatory indemnification provisions of the statute.

{¶56} I strongly disagree for the following reasons. First, I do not agree with the majority's conclusion regarding the statutory intent behind R.C. 2744.07(A)(2). Second, I do not agree that only the employee has standing to enforce the City's duty to pay a judgment where there is no dispute regarding the employee's statutory right to indemnification. Third, I would

find that Ayers, as a judgment creditor, is the real party in interest and has standing to assert the employees' statutory rights to indemnification against the City to satisfy the judgment. I agree with the United States District Court for the Northern District of Ohio that the state court was best suited to address Ayers's claims. *See Ayers*, N.D. Ohio No. 1:12-CV-753, 2014 U.S. Dist. LEXIS 94472, *4; *Ayers*, N.D. Ohio No. 1:12-CV-753, 2014 U.S. Dist. LEXIS 72116, *5.

**Statutory Intent and Private Cause of Action
under R.C. 2744.07(A)(2)**

**{¶57}** R.C. 2744.07(A)(2) provides:

(2) Except as otherwise provided in this division, *a political subdivision shall indemnify* and hold harmless an employee in the amount equal to *any judgment*, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or federal court * * * that is for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function, if at the time of the act or omission the employee was acting in good faith and within the scope of employment or official responsibilities.

(Emphasis added.)

**{¶58}** The majority indicates that Ohio courts use the three-part test established by *Cort,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26, to determine whether a private cause exists to enforce a statute. However in 2011, this court indicated that "there is ample authority for the proposition that the *Cort* test is no longer valid." *Grey v. Walgreen Co.*, 197 Ohio App.3d 418, 2011-Ohio-6167, 967 N.E.2d 1249, ¶ 8 (8th Dist.). In *Grey,* we indicated that the sole inquiry as to whether a private right of action existed is determined by examining legislative intent.

**{¶59}** We must construe the statute to carry out the intent of the General Assembly. *State v. Roberts*, 134 Ohio St.3d 459, 2012-Ohio-5684, 983 N.E.2d 334, ¶ 12. Courts must "avoid[ ] adopting a construction of a statute that would result in circumventing the evident purpose of the enactment" and we must avoid constructions that lead to "unreasonable or absurd results." *State*

*ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 543, 668 N.E.2d 903 (1996). Recognizing that Ayers has standing to enforce the City's statutory indemnification and hold harmless obligations furthers the legislature's purpose for enacting the statute as a remedy intended by the law.

{¶60} The majority implicitly recognizes that the legislature obviously intended to create a private cause of action against the City for indemnification of the judgment and to hold its employees harmless when it enacted R.C. 2744.07(A)(2). The majority, however, views the only purpose of the indemnification and hold harmless provisions of the statute is "to shield the employee from financial ruin resulting from an act committed within the scope of employment." I disagree.

{¶61} The plain terms of the statute evince the intent to satisfy judgments where persons are injured as a result of a municipal employee's conduct committed in good faith in the course and scope of employment, without a triggering event. The terms of the statute could not be more clear. It states: "a political subdivision *shall indemnify* and hold harmless an employee in the amount equal to *any judgment*, other than a judgment for punitive or exemplary damages, that is obtained against the employee in a state or federal court[.]" (Emphasis added). R.C. 2744.07(A)(2).

{¶62} The statute clearly does not allow for the City to finance the liable employees' personal bankruptcies in lieu of indemnifying them. In most cases, it would likely be more cost effective for the City to require the employee to declare personal bankruptcy than to indemnify the judgments. The purpose of the statute is for the City to pay the judgment, without a triggering event, not for the City to help its employees evade the financial consequences of a judgment that resulted from their tortious conduct.

{¶63} Even if we assume that the sole purpose of the statute is to protect the detectives from the injurious effects of the judgment, allowing the City to force Detective Kovach into bankruptcy by refusing or obfuscating the City's responsibility to indemnify, the judgment does not accomplish that purpose. It defeats it. The City's end run in the instant case is circuitous. It circumvents the purpose of R.C. 2744.07(A)(2) and the City's duty under the statute to indemnify its employees for the judgments rendered against them.

{¶64} The General Assembly did not intend to expose police officers to bankruptcy as a result of judgments entered against them for good faith acts committed in the scope of their employment. Quite the opposite is true. The legislature intended to protect our police officers from financial ruin under those circumstances. There is nothing in the statute that limits the private right of action to enforce the City's indemnification obligations to the employees of the political subdivision, and we should not read that into the statute. Doing so creates both unreasonable and absurd results by denying persons injured by the conduct of City employees acting within the scope of their employment of any meaningful relief.

{¶65} The majority's decision turns on who it believes can pursue this private cause of action. The cases the majority relies on to make this distinction involve different statutory language or cases in different procedural postures. For example, in *Strack*, 33 Ohio App.3d 336, 515 N.E.2d 1005, the appellate court determined that "R.C. 3901.20 and 3901.21, and Ohio Adm. Code 3901-1-07, proscribing unfair trade practices in the insurance industry, do not create an implied private cause of action in favor of insureds." *Strack* at syllabus. However, the *Strack* court found that "[n]owhere in the Ohio statutory or regulatory framework proscribing deceptive trade practices in insurance does it provide a civil remedy to a private party aggrieved by an

insurer." *Id*. at 337. Instead, the law expressly imposed the duty to enforce the law on the superintendent of insurance.

{¶66} The instant case is factually dissimilar from *Strack* because R.C. 2744.07(A)(2) is silent on who can pursue the private cause of action against the City. I see no valid reason to preclude a judgment creditor from pursuing the action when the creditor has a judgment against the employees and there is no dispute that the City is obligated to indemnify and hold its employees harmless from that judgment.

{¶67} The majority conflates the authority that a political subdivision's statutory obligation to indemnify its employees with the different principle of law that precludes a party from advancing a claim that would impose direct liability on the subdivision during the litigation phase. The majority relies upon *Piro*, 102 Ohio App.3d 130, 656 N.E.2d 1035. *Piro* did not address whether a judgment creditor could pursue a post-judgment claim for indemnification against a City. It held that the plaintiff could not pursue a direct cause of action against the political subdivision for the tortious acts of its employees.

{¶68} The distinct principles of law recognize, as the district court did, that a judgment creditor's claim for indemnification against the City is premature until the issue of the municipal employee's liability is determined by a final judgment. Ayers is not using R.C. 2744.07(A)(2) to impose direct liability on the City; he is asserting a post-judgment claim to enforce the City's indemnification and hold harmless obligations that were *automatically* triggered by the judgment. The very nature of indemnification is indirect liability whereby one party is obligated to cover the liability of another party.

{¶69} I agree with the trial court's analogy that Ayers's indemnification action against the City is akin to post-judgment proceedings against a tortfeasor's insurance company. The

insurance company is not directly liable to the injured party during the litigation of the negligence claim. But the insurer is obligated to indemnify its insured tortfeasor and directly pay the judgment to the judgment creditor once the insured is found liable within the coverage terms of the policy by a judgment.

{¶70} The statutory indemnity claim was not part of the substantive liability issue in the civil rights action; rather, it is the relief afforded to pay the judgment once the verdict and judgment were returned that found the detectives liable. No one could pursue the statutory indemnification claim until that judgment was rendered.

{¶71} The City has no defense to its mandatory indemnity obligations because it admits that the detectives were found liable for conduct carried out in good faith within the scope of their employment. Further, the bankruptcy court found that Ayers can pursue this claim against the City, in Kovach's name, without violating the bankruptcy orders. 11 U.S.C. 524 provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." The majority does not address this aspect of the case, which effectively provided an assignment of Kovach's statutory indemnification rights to Ayers.

{¶72} The Tenth District in *Stengel,* 74 Ohio App.3d 608, 600 N.E.2d 248 (10th Dist.1991), found that where the statute provides indemnity against liability, the City (as indemnitor) becomes liable and the cause of action accrues when the liability of the municipal employees arises by entry of a judgment against the municipal employee. *Id.* at 613. Under the statute, the City's indemnification obligations were triggered by the judgment and did not require any actual payment by the municipal employee. *Id.* *Stengel* was an indemnity action brought by the judgment creditor against the City. The *Stengel* court did not resolve whether the

judgment creditor had standing to bring the statutory indemnification claim against the City and limited its analysis to the various statutes of limitations that might apply to the claim.

**{¶73}** This is a state law claim and the federal law interpreting it is inconsistent. Nonetheless, I find, as the trial court did, that *Vaughan*, N.D. Ohio No. 1:10CV0609, 2011 U.S. Dist. LEXIS 136198 (Nov. 28, 2011), *aff'd in part, rev'd in part*, 514 Fed.Appx. 611 (6th Cir.2013), to be directly on point. In *Vaughan*, the federal court found that R.C. 2744.07(A)(2) requires the City to indemnify judgments entered against a Shaker Heights detective for liability resulting from good faith acts related to a governmental or proprietary function. "The clear statutory terms require the City of Shaker Heights to indemnify Detective Hyams's conduct for compensatory damages if that conduct was carried out in good faith within the scope of his employment." *Id*. at *4. Therefore, the federal court refused to dismiss the judgment creditor's indemnification claim against the City. In this case, there is a judgment against the City's employees for the good faith acts committed in the scope of their employment. There is nothing in the statutory language that should bar Ayers from asserting this claim against the City.

**{¶74}** The majority considers *Vaughan* to be an outlier and opts to rely instead upon the federal decision in *Ajamu*, N.D. Ohio No. 1:12CV1320, 2016 U.S. Dist. LEXIS 98127, *5-6 (July 27, 2016), which in turn cited *Maruschak*, N.D. Ohio No. 1:09 CV 1680, 2010 U.S. Dist. LEXIS 52811, at *6, fn. 8 (May 28, 2010). However, the trial court in this case clarified that *Maruschak* had no probative value in resolving the issue of Ayers standing to bring this claim against the City. Specifically, the trial court stated:

> *Maruschak* * * * is a ruling on a motion to dismiss and is not dispositive of the issues in this case. Interestingly, that case was remanded to the Common Pleas Court and was assigned to this Court's docket. The issue present in this case did not arise in the *Maruschak* case before this Court because it reached a settlement.

(Emphasis added.)  *Trial Court's Decision on Summary Judgment at p. 3.*  The trial court further noted that the *Ajamu* court adopted dicta from the *Maruschak* decision in finding that the right to indemnification was the right of the employee and was not enforceable against the City. *Id.*[6]

{¶75} *Ajamu* did not involve an attempt by a judgment creditor to assert a post-judgment statutory indemnification claim against the City.  The court correctly recited that R.C. 2744.07(A)(2) "does not remove a political subdivision's immunity; rather, it obligates the political subdivision to indemnify its employees *if* they are found liable for a good faith act that is related to a governmental or proprietary function."  (Emphasis added.)  *Ajumu* at *5, citing, *Piro,* 102 Ohio App.3d 130, 656 N.E.2d 1035.  Until the judgment against the municipal employee is rendered, a plaintiff's statutory indemnity claim is premature.  The authority upon which *Ajamu* relied was a mere footnote in the federal district court's decision in *Maruschak*.

{¶76} In *Maruschak*, the plaintiff had not obtained any judgment against the City's employees.  The federal district court dismissed some counts and then declined to exercise jurisdiction over the remaining state claims that were remanded to the Cuyahoga County Court of Common Pleas.  Coincidentally, the claims that were remanded to the state court in *Maruschak* were assigned to the docket of the same jurist that found Ayers does have standing to pursue a post-judgment statutory indemnification claim against the City in this case.  It was unequivocally stated that this issue was not addressed, resolved, or decided in *Maruschak* because the case settled.

---

[6] The dicta was taken from fn. 8 in the *Maruschak* opinion.

**{¶77}** I disagree that *Vaughn* is an outlier and submit that it sets forth the proper rule of law. *Id.*, N.D. Ohio No. 1:10CV0609, 2011 U.S. Dist. LEXIS 136198; *see also Ayers*, D.D.C. No. 1:12-CV-00753, 2014 U.S. Dist. LEXIS 72116 at *5 (where the district court rejected "the notion that only detectives Cipo and Kovach as employees [could] assert a claim for indemnification."). I would find that the legislature did intend to create a private right of action to enforce the City's indemnity and hold harmless obligations.

### Ayers has Standing to Bring the Claim

**{¶78}** Standing is "a party's right to make a legal claim or seek judicial enforcement of a duty or right." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27. A true party in interest is able to demonstrate an injury in fact, "which requires a showing that the party has suffered or will suffer specific injury." *Camp St. Mary's Assn. of W. Ohio Conference of the United Methodist Church, Inc. v. Otterbein Homes*, 176 Ohio App.3d 54, 2008-Ohio-1490, 889 N.E.2d 1066, ¶ 13 (3d Dist.2008).

**{¶79}** Generally, a party must pursue its own claims and lacks standing to assert the rights of another. However, a third party may assert the rights of another where the following conditions are met: "a claimant (i) suffers its own injury in fact; (ii) possesses a sufficiently 'close' relationship with the person who possesses the right, and (iii) shows some 'hinderance' that stands in the way of the claimant seeking relief." *N. Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005, 871 N.E.2d 586, ¶ 14.

**{¶80}** The majority did not apply the law regarding third-party standing. I would find that Ayers satisfies all three requirements of third-party standing, which in turn would allow him to enforce the City's duty to indemnify the judgment against its employees who violated his civil rights. *Id*. His ability to do so furthers not only the secondary purpose of the statute, which is

to compensate parties who were injured by the City's employees who were acting in good faith in the course of their employment, but it also serves the primary purpose of the statute, which is to protect those employees from suffering financial ruin. It will eliminate the ability of the employer to manipulate, deceive, or coerce their employees into declaring bankruptcy as a means of avoiding the City's own independent statutory obligations to pay the judgment — which is exactly what happened in this case.

### Ayers Suffered His Own Injury in Fact

{¶81} The City provided both Kovach and Cipo with a defense in the 2012 civil rights action pursuant to R.C. 2744.07. At no point did the City ever reserve its rights to deny its indemnification obligations pursuant to R.C. 2744.07(A)(2). The trial court order indicates "[i]t was confirmed during a hearing before this Court that Cleveland defended the detectives without any reservation of rights and took the position that all of their actions were taken within the course and scope of their employment and done in good faith." This is an established and irrefutable fact at this stage of the litigation. The City's mandatory statutory indemnification obligations were triggered as a matter of law upon entry of the judgment. The City has no basis upon which to deny or dispute its statutory obligation to indemnify and hold the detectives harmless from the judgment debt. The statute is silent as to who may pursue a statutory indemnification claim when the City breaches its indemnification duty.

{¶82} The majority is actually reading a limitation into the statute as to who can bring this claim. This court should not read a limitation into the statute that the legislature chose not to include, especially where it only serves to reward the City's transparent, self-serving efforts to avoid its clear statutory obligations to pay this judgment. The majority's interpretation of the

statute will not provide any protection to political subdivision employees and will operate to cause them the very financial ruin and distress that the statute was designed to prevent.

{¶83} If Ayers is not permitted to pursue this claim, he will suffer harm because he will not be able to collect from the City on the judgment.

### Ayers Possesses a Sufficiently "Close" Relationship with the Person who Possesses the Right

{¶84} Ayers, who is entitled to receive payment of the judgment, has a close relationship with Kovach, who would be otherwise obligated to pay it but for the statutory indemnification provisions of R.C. 2744.07(A)(2). Both parties have an interest in having the City's indemnification obligations enforced. Neither party receives any benefit, and both suffer financial detriment if the City is allowed to breach its duty to pay the judgment.

{¶85} There is no requirement that a municipal employee has to first pay any amount of the judgment to the plaintiff or that the employee has to make any formal demand to the City to trigger the statutory indemnification obligations of R.C. 2744.07(A)(2). Once the judgment is entered, the City's duty to pay the judgment in the full amount is automatic. There is no requirement that the employee has to file an action or do anything to trigger the City's duty to indemnify the entire amount of the judgment. Ayers, who is the judgment creditor, is the real party in interest and has standing to assert the statutory indemnification claim even if the liable employee chooses to forego it.

### This Record Demonstrates a "Hinderance" that Stood in the Way of Kovach and Cipo Pursuing Statutory Indemnification

{¶86} The City's machinations in this case hindered Kovach and Cipo from even asking the City to indemnify the judgment and hold them harmless. The City provided the detectives with representation in the civil rights action. The City then failed to advise them of their rights

to indemnification, and instead, hired private counsel to have Kovach declare personal bankruptcy.[7]

{¶87} It must be observed that a jury awarded Ayers this judgment because Kovach and Cipo violated his civil rights to the point where he spent over a decade in prison and suffered extensive damage as a result of their actions.   By finding only Kovach and Cipo have the power to compel the City to satisfy the judgment, we would be empowering the very same people who violated Ayers's civil rights to expose him to further damage by eliminating his ability to have the judgment satisfied.

### Ayers is a Real Party in Interest — Assignment of Rights is Unnecessary

{¶88} The majority agrees that the City has no basis to deny the claim, but insists that either Kovach or Cipo must formally assert it.   The majority and the City refer to certain post-judgment offers that were made by the City to assign the detectives' indemnification rights to Ayers in exchange for his agreement to forbear collection efforts against them directly.   This was unnecessary and not required by the law to trigger the City's statutory indemnification obligations.

{¶89} First, the City conceded at oral argument that it has never required this type of an assignment in any other case where it has satisfied a judgment pursuant to its statutory indemnification provisions of R.C. 2744.07.   Even if it did, such assignment would be worthless if we proceed to find that the law permits the City to finance the municipal employee's personal bankruptcy in order to extinguish its own obligations to indemnify these judgments.   There is no basis in the statute or anywhere else that would authorize the City (who is ultimately responsible

---

[7] The City entered into an agreement with defendant-Attorney Leneghan in April 2013 to assist Kovach and Cipo with personal bankruptcy proceedings in an effort to secure the discharge of their debt.   Cipo passed away in July 2013.

to pay the judgment) to assign the officer's rights of indemnification to a third party who has obtained the judgment against the officer.

{¶90} In any case, the assignment of the defendant detectives' indemnification rights, if accomplished, seems to be a distinction without a difference. The City knew it had the statutory obligation to pay the judgment and hold its detectives harmless from it, given the fact that they never disputed that all actions were done in good faith and within the scope of employment. There are several references in this record where the City paid monetary judgments directly to the prevailing parties thereby holding their employees harmless, without requiring an assignment and without having any demand to do so from the liable employees. It is difficult to comprehend why the City even made this overture to assign the detectives' statutory rights. If the City had any intention of paying the judgment, it could have just done so.

{¶91} Even if Ayers had been assigned the detectives' statutory rights to indemnification, Ayers would still be a third party who the majority finds is not entitled to pursue the claim because the assignment of indemnification rights contradicts the majority's argument as to the invalidity of a third-party claimant.

{¶92} Furthermore, if an assignment is deemed necessary, Ayers obtained it through the Kovach bankruptcy proceedings. The bankruptcy court granted Ayers's motion to reopen Kovach's bankruptcy case specifically to allow him to pursue a state court action against the City in Kovach's name. The bankruptcy court recognized Ayers's standing to pursue the indemnification claim against the City as the real party in interest. This would not violate the discharge injunction because the City was obligated to pay the judgment pursuant to its statutory indemnification obligations, not Kovach.

{¶93} In the instant case, the City did not indemnify the detectives from the judgment and did not even advise them of their rights to indemnification. Instead, the City actively participated in an effort to deprive Ayers of the judgment by orchestrating a scheme to take the liable detectives through bankruptcy. The City used taxpayer dollars to hire defendant-Attorney Leneghan to represent Kovach through personal bankruptcy in an effort to discharge this debt, with the ultimate goal of extinguishing the City's liability for the judgment. The record contains the City's engagement letter with Leneghan, who would only be paid if he filed for bankruptcy on the detectives' behalf. (Exhibit No. 28 to Ayers's motion for partial summary judgment). Leneghan had no financial incentive to pursue indemnification from the City and there was a clear conflict of interest between the City (that was funding the personal bankruptcy legal representation) and Leneghan's clients (which were the detectives declaring bankruptcy). This conflict was not disclosed to Kovach or Cipo.

{¶94} All of these factors demonstrate how the employees were hindered from pursuing their own claims against the City for indemnification and to be held harmless from the judgment. Based on the foregoing, I would find that Ayers, as a real party in interest, can pursue his statutory indemnity claim against the City.

## No Dispute that Statutory Indemnification was Triggered

{¶95} Because the City defended Kovach and Cipo without a reservation of rights, it is now estopped from denying its statutory indemnification obligations to satisfy the judgment. *See Oladeinde v. Birmingham*, 118 F.Supp.2d 1200, 1211 (N.D. Ala.1999). In *Oladeinde*, the City attempted to deny its obligations to indemnify a judgment entered against its officers after having defended them without a reservation of rights. The court detailed a lengthy history of the City's practice to pay judgments entered against its employees and the troubling aspects of the City's

obvious conflict of interest in continuing to represent the detectives once the judgment was rendered that triggered their indemnification obligations. *Id.* The court held the City was obliged to indemnify the judgment and reasoned:

> [a]s a matter both of equity and of public policy, the negative consequences that would result from allowing a public employer to deny indemnification under circumstances like these far outweighs any benefits to employers. Unless there is indemnity, a municipality's pecuniary interest lies in having no liability or minimal liability for itself.

*Id.* at 1212.

{¶96} Applying similar reasoning, the City is precluded from avoiding its statutory obligation to indemnify the judgment entered against its employees here. The City has, on other occasions, paid judgments directly to the judgment creditors after unsuccessfully defending its employees in lawsuits. The City continued to represent the detectives post judgment and failed to advise them of their rights to have the City pay the judgments. The City's undisclosed conflict of interest led Kovach to declare bankruptcy, which was against her interest, but furthered the pecuniary interests of the City.

{¶97} I further find that the majority opinion is in conflict with the settled precedent in this district that recognizes the City's automatic statutory obligation to indemnify its employees for acts committed in the scope of employment and in good faith. *See Lyons v. Teamhealth Midwest Cleveland*, 8th Dist. Cuyahoga No. 96336, 2011-Ohio-5501 ("Although the law provides that political subdivision employees may be sued individually * * * the political subdivision remains obligated to indemnify and defend its employees pursuant the terms of R.C. 2744.07." *Id.* at ¶ 56.) The instant case creates a previously unrecognized and unintended exception to the law that clearly encourages political subdivisions to attempt to minimize their own obligation to indemnify these types of judgments by compelling their employees to pursue personal bankruptcy and

funding it with taxpayer dollars. The conflict created is the majority's holding that political subdivisions will not be obligated to indemnify judgments entered against its employees pursuant to R.C. 2744.07 if the City successfully aids or assists the employee in avoiding or extinguishing the debt, or in circumstances where the individual is no longer employed with the municipality, i.e., fired, retired, deceased.

{¶98} I respectfully dissent from the majority's decision that would allow the City to avoid its statutory indemnification obligations by engaging in practices that are against the interests of its employees, that undermine the purposes of the statute, and are against public policy. I would find that under these circumstances, the judgment creditor has standing to pursue the statutory indemnification claim created by R.C. 2744.07(A)(2) once judgment is rendered against the municipal employee resulting in compensatory damages for conduct committed in the course and scope of employment and in good faith. Alternatively, I find that the bankruptcy court's order conferred standing upon Ayers to pursue the claim in Kovach's name because the bankruptcy order did not discharge the City's obligations to indemnify the judgment.

{¶99} Because I would affirm the trial court's decision, I would proceed to address Ayers's cross-claim. The federal jury entered its $13,210,000 verdict against the detectives on May 9, 2013, and as the majority notes, the judgment was enlarged to include an additional $390,000 in costs and attorney fees. I would find in favor of Ayers on his cross-claim and remand the matter to have the trial court enter an order directing the City to pay the judgment rendered by district court in the full amount, including costs and attorney fees. Indeed, the state trial court was best suited to decide these issues and did so properly.